## Flattery *versus* Flattery.

1. The authority given to a married woman by the Act of April 15th 1851 to loan money of her separate estate, through the intervention of a trustee, implies the power to arrange the terms of the loan and provide when and how it shall be repaid, and whether with or without interest.

2. When the power thus conferred is freely and voluntarily exercised, the transaction necessarily assumes the form of a contract, binding equally on both parties.

3. Per STERRETT, J. If it should appear that the loan was not voluntarily made on the part of the wife ; that it was effected by the fraud or coercion of the husband, the law would doubtless interpose for her protection and compel immediate payment of the money thus unlawfully obtained.

October 28th 1879.  Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ.  PAXSON and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Cambria county:* Of October and November Term 1879, No. 275.

Assumpsit by Mary Flattery, by her next friend, Samuel Shoemaker, against William Flattery.

The facts were :  William Flattery owed his wife Mary Flattery $2740, her separate funds, which he had received from her.  Afterwards she was compelled by cruel treatment to leave his abode, and petition for a divorce, which was decreed the 2d April 1877.  The case was affirmed by this court, November 4th 1878.  (See 7 Norris 27.)

After the decree in divorce below, Mary Flattery brought the present action.  On the trial the plaintiff proved by the sworn admissions of the defendant that he had received $2740 of her money, and rested.

The only evidence offered by the defendant was a note which he had given his wife for $2540, on the 4th December 1875.  This note was produced by the plaintiff on notice and tendered to de-

fendant in court. The note was read in evidence, against the objection of plaintiff's counsel; its effect to be passed on by the court afterward.

There was no disputed question of fact for the jury, and the court, Dean, P. J., reserved the legal questions, and directed a verdict for the amount admitted. Afterwards, on argument the legal questions, except the question of interest, was decided in favor of plaintiff.

The other material facts will be found stated in the opinion of this court.

*James Potts*, for plaintiff in error.—A married woman cannot, by her next friend, maintain an action of debt against her husband on a contract made during coverture. Such action is not authorized by the Act of the 11th of April 1848, or any of its supplements: Retter *v.* Retter, 7 Casey 396; Pettit *v.* Fritz, 9 Id. 118; Bear *v.* Bear, 9 Id. 525; Kutz's Appeal, 4 Wright 90; Miller *v.* Miller, 8 Id. 170; Diver *v.* Diver, 6 P. F. Smith 109.

A married woman can loan money to her husband, taking an obligation in the name of a third person as trustee; Act of the 11th of April 1851; Johnston *v.* Johnson's Adm'rs, 7 Casey 450.

*D. McLaughlin* and *R. L. Johnston*, for defendant in error.

Mr. Justice STERRETT delivered the opinion of the court, January 5th 1880.

The defendant in error loaned to her husband money of her separate estate, and accepted as security therefor his note, in the following form :—

" Six years after date, I promise to pay to Samuel Shoemaker, in trust for my wife, Mary Flattery, two thousand five hundred and forty dollars, money loaned by her to me; and in case of her death previous to this date, I agree to pay the above amount within one year after her death to said trustee for her heirs, as she may by will direct, and without interest until paid.

December 4th 1875.　　　　　WILLIAM FLATTERY."

In July 1876 she instituted proceedings for a divorce *a vinculo matrimonii*, which, on March 29th 1877, resulted in a final decree in her favor. A few days thereafter the present action of assumpsit was brought against her late husband to recover the money loaned to him during coverture, including the amount specified in the note. The declaration was in the common counts for money lent, &c. The main ground of defence in the court below, as presented in defendant's fifth point, was :—

" That the claim sought to be recovered in this action was for

money loaned by the plaintiff to the defendant during coverture, and for which an obligation in writing was made by the defendant to Samuel Shoemaker in trust for the said plaintiff, which obligation was then delivered to and accepted by her, and which she has ever since held and now produces; that by the provisions of said obligation it was not due or payable when this action was instituted, nor is it now due or payable; and there being no allegation of fraud, by the pleadings or evidence, on the part of the defendant in obtaining the money for which the obligation was made and delivered, nor in the conditions of the obligation, it is conclusive evidence of their agreement, and therefore no action can be maintained by the plaintiff against the defendant for the money so loaned, except upon the said written obligation, and the verdict should be for the defendant."

The allegations of fact embodied in this point were not controverted, and the learned judge refusing, pro forma, to affirm it, directed a verdict in favor of the plaintiff, subject to the opinion of the court on the questions of law reserved. With the exception of the question as to the right of the plaintiff to recover interest, the questions of law reserved were ruled against the defendant below, and judgment entered on the verdict.

The learned judge held, in effect, that the plaintiff below was not bound by the note as to the terms of credit given therein; that it was voidable at her election, and that having elected to repudiate it by bringing suit immediately after she was divorced, she had a right to do so. While he conceded that a married woman may put her husband in possession of her money, and that, in the absence of proof to the contrary, the law will presume it a loan; that the husband may, during coverture, repay or secure the repayment of money received from her, and that a judgment-note given by him directly to her as security will be enforced, he held that "her power to make a contract so manifestly to her prejudice as this one," could not be sanctioned, when she chose to repudiate it on being released from the bonds of matrimony. Undoubtedly, the doctrine of protection to married women is greatly favored by the law, but we think it would be extending it beyond the verge of propriety to hold that an instrument like the one before us is, upon its face alone, "so manifestly to her prejudice" that she may repudiate its terms at pleasure. It is true the term of credit is six years, without interest; but she might have made an absolute gift of the entire sum to him. Moreover, in the event of her decease, which might have occurred at any time after the note was given, it is payable within one year to her testamentary appointees.

It cannot be doubted, especially since the passage of the Act of April 15th 1851, that a married woman may loan her husband moneys belonging to her separate estate. The 22d sect. of that act, in express terms, makes it lawful for her to do so, and provides

[Flattery *v.* Flattery.]

that she may take as security therefor a judgment or mortgage against his estate in the name of a third person, who shall act as trustee for her. The authority thus given to lend money of her separate estate, through the intervention of a trustee, implies the power to arrange the terms of the loan and provide when and how the principal shall be repaid, and whether with or without interest. When the power thus conferred is freely and voluntarily exercised, the transaction necessarily assumes the form of a contract, binding equally on both parties. If it should appear that the loan was not voluntarily made on the part of the wife; that it was effected by the coercion or fraud of the husband, the law would doubtless interpose for her protection and compel immediate payment of the money thus unlawfully obtained. In the present case it was not shown that any undue advantage was taken of the defendant in error. After receiving the first note of November 13th 1875, she expressed dissatisfaction therewith, for the reason that it was not made payable to a trustee for her use. To meet this objection the note above set forth, payable to a trustee of her own selection, was given in lieu thereof. To hold that under such circumstances the husband was not entitled to the benefit of the credit given, him by the terms of the note, would in a great measure defeat the purpose of the act.

The 7th and 8th assignments of error are sustained. We discover nothing in the remaining assignments that calls for special notice.

Judgment reversed, and a *venire facias de novo* awarded.