THE SAVANNAH, FLA. & WESTERN RAILWAY CO. *v.* GRAY.

Where the evidence of an eye-witness shows that the animal, the killing of which is complained of, was killed without fault or neg-

ligence, and where the testimony of the plaintiff given at a former trial tends to confirm that evidence, and the eye-witness stands unimpeached, new evidence as to tracks made by the animal which can be reconciled with all the other facts without imputing perjury to any witness, adds no strength to the plaintiff's case. It follows, that the plaintiff could not recover at the second trial, and that a second verdict in his favor should be set aside.

October 3, 1890.

Evidence. Negligence. Railroads. Before Judge BOWER. Decatur superior court. November term, 1889.

Reported in the decision.

D. A. RUSSELL, by J. H. LUMPKIN, for plaintiff in error.

O. G. GURLEY and J. E. DONALSON, by brief, *contra.*

BLECKLEY, Chief Justice.

At the new trial of this case which resulted from the judgment on a former writ of error between the same parties, 77 *Ga.* 440, the plaintiff stopped with his own testimony, after showing the value of the colt, that it was killed by the running of an engine and train on the railway, that he saw it about half an hour afterwards, and saw its tracks where the train struck it, and that only its forefeet made tracks between the rails. The defendant then proved by an eye-witness, a division supervisor of the railway, that the colt ran up the embankment suddenly, and was killed just as its front feet got on the track; that the witness was on the fireman's box and was looking out, the train being the fast mail, and running at about 35 miles per hour; that when he first saw the colt, it was running out of the field towards the track from the left side, and was about 150 yards ahead of the engine; that the engineer was on his box, and could not have seen the colt, and had he seen it, could not have prevented killing it; that it was impossible to stop or check the train in time, and that it was done so quickly that witness could not have warned him had he tried. The plaintiff sought to overcome

this evidence by that of a school-teacher who testified that, being of a curious turn of mind, he examined the ground about three quarters of an hour after the colt was killed, and found fresh tracks outside of the rails and by the ends of the cross-ties, showing that the colt ran down by the side of the track ahead of the engine 100 yards from where it finally got on the track and was killed; that the colt was running, appeared from the manner in which the fresh dirt was thrown up; that the railway track was perfectly straight through an open field, and that the engineer, if he had been on the lookout, could have seen the colt for 500 yards from where it commenced to run down the side of the track. He finally stated, however, that if the plaintiff swore on a former trial that these tracks of the colt down the outside of the cross-ties were old feeding tracks, he did not know whether the plaintiff was correct or not. The plaintiff, being reintroduced, stated that he did not remember exactly what he swore on the former trial; but that if he testified, when it was fresher in his mind than now, that he saw old feeding tracks down the road but no fresh tracks, and that the fresh tracks he saw came up out of the field on to the embankment, he supposes it was true. The defendant then read from the plaintiff's evidence on the former trial as follows: "Q. You say you saw the colt's tracks. Where did you see them? How far from where the colt was lying? Ans. About 50 or 75 feet. Q. Which way were they going? Ans. From out of the field on to the railroad track, and from there I saw no more of them. Q. The colt didn't run down the track ahead of the engine? Ans. No, sir. I saw no signs of where it ran down the track. I saw some old tracks outside of the ties, where the colt had gone down the track, but I saw no fresh tracks," etc.

The jury again found for the plaintiff, and a motion

for a new trial, made by the defendant, and raising the question of the sufficiency of the evidence to warrant the verdict, was overruled by the court. We have held up the case for a considerable time for careful study, and have reached the conclusion that the plaintiff added no strength to his case by forgetting some of the facts testified to by him on the former trial, and offering as a substitute the testimony of the school-teacher giving the result of an investigation made by him, with no eye to his own interest or that of any one else, but only for the satisfaction of his curiosity. There is no necessary conflict between the testimony of the new witness, who saw nothing of the actual occurrence, and that of the eye-witness who saw it all. Two methods of reconciliation are open : The teacher may have been mistaken as to the tracks being as fresh as he supposed; for he says himself that, if the plaintiff swore on a former trial they were old feeding tracks, he did not know whether the plaintiff was correct or not. The plaintiff himself had a special interest in acquiring that knowledge, and there is little or no probability that he made a mistake in the matter, in favor of the company and against himself. He was asked whether the colt ran down the railroad ahead of the engine, and answered, No, adding that he saw some old tracks outside of the ties where the colt had gone down the track, but no fresh tracks. This shows that he examined the ground which the teacher examined ; and doubtless he did it on the same day, for he says he saw the colt in about half an hour after it was killed. There is no suggestion that he did not look for tracks at that time, or that his search was made at a different time. Moreover, according to his evidence as given at the former trial, he did see the tracks of the colt coming from out of the field up to the railroad track, and this corroborates the eye-witness who saw the colt as it approached the railroad.

Another way of reconciling the two witnesses is, that it might be granted that the tracks which the teacher saw were fresh and made by the colt, yet they might have been made that same day before the train reached the neighborhood, and still the colt, just before being killed, may have come up out of the field in the manner represented by the eye-witness. To avoid the imputation of perjury to a witness who stands unimpeached, even this explanation might be adopted, though the former one suggested is much more probable. Juries are constantly instructed to reconcile evidence, where they can do so, without the imputation of perjury to any witness. Under a right interpretation of this rule, there is absolutely no conflict of evidence now any more than there was on the previous trial. Consistency requires us, therefore, to direct that this verdict be set aside, and a new trial granted.        *Judgment reversed.*