Argued May 7, decided August 17, rehearing denied October 26, 1909.

## TAYLOR *v.* TAYLOR.

[103 Pac. 524.]

APPEAL AND ERROR—LAW OF THE CASE.

1. A judgment of an appellate court concerning a subject not in issue is void and subject to collateral attack, and may be disregarded by the trial court; but it cannot be so disregarded for fraud or mere irregularities.

DIVORCE—PROPERTY RIGHTS—DETERMINATION—ACQUIESCENCE.

2. Where the parties to a divorce proceeding made no objection to the determination of their property rights in the property in controversy, they impliedly consented to such determination concerning real estate mentioned in the pleadings in the action, and the husband, having been directed to convey certain of such real estate to his wife, acquiesced in the decree by executing a deed to her in accordance therewith.

APPEAL AND ERROR—PRIOR APPELLATE DETERMINATION—LAW OF THE CASE.

3. Where, on appeal from a divorce decree, it was not suggested that the holding awarding certain property to the wife was in conflict or inconsistent with any of the issues, the decree of the Supreme Court, at the expiration of the time allowed for rehearing, was not subject to review on any other appeal, or in proceedings in any court in which the question might arise, but became the law of the case.

TRIAL—WAIVER OF IRREGULARITIES.

4. An order overruling a motion for a nonsuit will not be disturbed on appeal, when the omission, if any, is afterwards supplied by either party to the proceeding.

APPEAL AND ERROR—MOTION FOR NONSUIT—REVIEW.

5. The denial of a motion for a nonsuit must be reviewed on appeal with reference to the entire record submitted, and must be affirmed if the proof adduced was admissible and discloses facts entitling the case to be submitted to the jury.

TRIAL—RECEPTION OF EVIDENCE.

6. Where a part only of the judgment roll was material to an issue, the court did not err in refusing to admit the entire record.

DIVORCE—PROPERTY RIGHTS—DETERMINATION.

7. The individual property of a married woman, not growing out of the marriage relation, or the proceeds thereof, is not a proper subject for adjudication in an action by her for divorce, as against a timely objection.

JUDGMENT—CONCLUSIVENESS—FINDINGS OF FACT.

8. Findings of fact leading to a decree, affirmed by the Supreme Court, in a prior action between the parties, cannot be considered in a subsequent proceeding, so far as they are in any manner inconsistent with the decree affirmed.

JUDGMENT—PRIOR ADJUDICATION—DETERMINATION OF ISSUES—OPINION.

9. Where a decree, affirmed on a prior appeal, is ambiguous, or fails to show on which of several issues it is founded, the opinion of the Supreme Court may be examined, to determine the point actually decided.

DIVORCE—PROPERTY RIGHTS—"PROPERTY GROWING OUT OF MARRIAGE RELATION."

10. The expression "property growing out of marriage relation," which a court in a divorce proceeding is authorized to distribute, has reference only to that class of property, the interest in which of either husband or wife attaches by operation of law, as dower, curtesy, tenancy by the entirety, or in case of divorce, provision for division of which is made in Section 511, B. & C. Comp., and does not apply to property belonging to the wife.

DIVORCE—ACTION BY DIVORCED WIFE AGAINST HUSBAND—STATUTES.

11. Under Sections 5244, 5249, B. & C. Comp., extending to a wife, as well as to the husband, such rights of action with reference to each other as exists with reference to other parties, a *feme sole*, after divorce was authorized to sue her former husband in assumpsit to recover rents collected by him from her separate property, for which he had failed to account.

JUDGMENT—RES JUDICATA—QUESTIONS CONCLUDED.

12. A judgment or decree is conclusive as to every matter actually litigated, and, with certain exceptions, as to every matter which might have been litigated, or decided as an incident thereof.

JUDGMENT—PAROL EVIDENCE—CONTRADICTION OF RECORD.

13. Extrinsic proof and parol evidence is inadmissible to explain what was formerly adjudicated in a prior decree respecting matters not there in issue.

HUSBAND AND WIFE—NECESSARIES—WIFE'S LIABILITY—STATUTES.

14. Section 5239, B. & C. Comp., providing that husband and wife, or either of them, is chargeable with family expenses, including necessaries or household supplies, and that they may be sued jointly in reference thereto, is for the protection of creditors only, and does not change the common-law duty of the husband to maintain his wife during coveture and to provide family necessaries, as between them.

HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—RENTS AND PROFITS —AUTHORITY OF HUSBAND.

15. Where a husband, as his wife's agent, rented her separate property to a merchant tenant, his agreement that the family account for necessaries purchased of the merchant should be deducted from the rent was not within the scope of his authority, nor binding on the wife by reason of her mere acquiescence or silence, in the absence of clear and distinct acts on her part showing her consent thereto.

HUSBAND AND WIFE—WIFE'S SEPARATE PROPERTY—RENTS—APPLICATION TO TAXES OR IMPROVEMENTS.

16. Where a husband acted as his wife's agent to rent her separate property, he was not, by such fact alone, authorized to apply the rent received to the payment of taxes or improvements.

DIVORCE—CONCLUSIVENESS OF DECREE—PROPERTY RIGHTS.

17. Where, in a divorce proceeding, the decree, in addition to granting a divorce, granted plaintiff a money allowance in specific real property with

the intent that such allowance should amount to a division of property accumulated by their joint effort during coverture and the settlement of all rights growing out of the use of the property, and after final adjudication by the Supreme Court both parties acquiesced therein and accepted the benefits of the decree, it was conclusive against the wife's right to recover rents collected from the property which the husband conveyed to her, which accrued prior to such conveyance.

(MR. JUSTICE KING dissents from the last paragraph only.)

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE KING.

This is an action by Isabella Taylor against Moses Taylor, formerly her husband, for money had and received. In the year 1905, plaintiff and defendant, pursuant to a suit instituted the previous year, were divorced. In the decree alimony was awarded the wife, and certain property rights were adjudicated, a general statement concerning which may be found in *Taylor v. Taylor,* 47 Or. 47 (81 Pac. 367). The present action involves the right to recover money alleged to have been received by defendant in the renting, together with that collected by him in the sale, of lots 11 and 12 in block 1 of Kirk's addition to Athena, Oregon.

It appears that during the year 1900, Moses Taylor gave and deeded to his then wife, the plaintiff herein, the lots mentioned, known as the "Athena property." Later he found a purchaser therefor at the agreed price of $6,000, received part payment thereon, caused the proper conveyance to be executed, and took a mortgage in his own name for the balance of the purchase price. The purchaser subsequently defaulted, and, to secure a cancellation of the debt and mortgage, conveyed the property to Moses Taylor, instead of to Mrs. Taylor, from whom he had acquired it. In the divorce proceeding both the trial court and the supreme court found that Isabella Taylor had at one time held the legal title to the Athena lots, and that, notwithstanding the subsequent transfers in reference thereto, she had at all times been the equitable owner thereof, and accordingly decreed the realty described, together with other lands and per-

sonalty, to her as her individual property, at the same time awarding her alimony in the sum of $6,500. .

The complainant, as a first cause of action, avers that between October 1, 1901, and March 1, 1905, she was the owner in her individual right of the Athena lots, and that between the latter date and the time when they were reconveyed to her by the defendant, under the decree of the court, the property was rented to a third party by defendant as her agent, at a monthly rental of $50 a month, all of which defendant received, amounting, including interest, to $2,707.60, none of which has been paid. And as a second cause of action alleges: That in December, 1900, she was the owner of a certain piece of real estate in Umatilla County—which the record discloses refers to the Athena property—which she sold, in pursuance whereof, and as a part of the purchase price, she alleges there was paid to her then husband, this defendant, the sum of $3,800 for her use and benefit; that defendant concealed this fact from her, and has neglected and refused to pay to her any part of the sum thus collected, which, with interest thereon, aggregates $5,367.60, for which sum, together with that specified in the first cause of action, judgment is demanded.

Defendant answered admitting that between October 1, 1901, and March 1, 1905, the premises were rented at the monthly rental averred, but denies that he collected any part thereof, except the sum of $300, and denies that any part of any such collections made by him was for the use or benefit of plaintiff, or that he had refused to pay any part thereof, and as an affirmative defense thereto alleges that at all times prior to September 1, 1904, plaintiff had with the store of the tenant who occupied the premises, an open running account, and that her family traded sufficiently with said tenant to pay the rents to that date, the defendant thereby and in that manner receiving the rents therefor, by reason of which nothing is due plaintiff from defendant for rents during

such time; that after September 1, 1904, he collected the $300 above mentioned, and no more, on the rents on said property, none of which sum is due plaintiff. It is also denied that on or about December 1, 1900, plaintiff was the owner of the "certain piece of real property" as alleged, or contracted to sell and convey the same, or that defendant, as agent, received the sum of $3,800 for the use and benefit of plaintiff, or any sum as purchase money thereon greater than $1,000, which latter sum he denies was received for plaintiff's use or benefit. This was followed by averments to the effect that $250 thereof was repaid to the purchaser of the realty, leaving the net amount received by defendant on the alleged transaction, the sum of $750, and no more, which it is denied that he failed to pay to plaintiff, or that any part thereof is due or owing to her. He further alleges that the said sum of $750 was paid out in improvements upon the buildings and in taxes upon the Athena property, and that $1,022.90 in all was paid therefor. As an affirmative and separate defense, defendant alleges that plaintiff should not be permitted, and is estopped, to assert a right to any of the moneys collected for rents or from the sales in question, setting out in support thereof proceedings in the divorce suit, consisting of the pleadings, findings of fact, and decree of the trial court, together with the mandate with the decree thereon of the cause on appeal to the Supreme Court. A demurrer was interposed and sustained to this plea on the ground that sufficient facts were not stated to constitute a defense, and, a reply having placed the cause at issue, the action was tried, resulting in a verdict and judgment for plaintiff in the sum of $2,763, from which defendant presents this appeal.     ·   REVERSED.

For appellant there was a brief over the names of *Messrs. Raley, Richards & Raley,* with oral arguments by *Mr. James H. Raley* and *Mr. M. C. Richards.*

For respondent there was a brief with oral arguments by *Mr. Douglas W. Bailey* and *Mr. S. F. Wilson.*

MR. JUSTICE KING delivered the opinion of the court.

The questions here involved will, so far as practicable, be examined in their logical order, without reference to the numerical order assigned by appellant.

1. Assignments of error Nos. 1, 2, 3, 6, 10, and 11, respectively, all bear upon the same general subject presented for consideration, and will be considered together. They include the rulings of the trial court upon the demurrer to the answer, upon a motion for nonsuit, and the exclusion of certain evidence offered by defendant. In this connection the position of defendant, briefly stated, is: (1) That the decree in the divorce suit, so far as it relates to the Athena lots, is void; (2) that, if not void, the matters here involved were fully determined therein and are not subject to investigation here.

It appears from the averments in the answer, to which a demurrer was sustained, that in her petition for alimony, as well as in her answer subsequently interposed in the divorce suit, the plaintiff herein assumes to give in detail the property owned by Moses Taylor, and included therein the Athena realty with other property there described, as to which Taylor made no denial. After setting up an affirmative defense therein, she concluded her answer by demanding: (1) Dissolution of the bonds of matrimony; (2) that a decree be granted giving her a divorce, together with the custody of certain children there named; (3) that she be decreed the ownership of 160 acres there described in section 21; (4) an undivided one-third interest in all her husband's real estate; (5) $14,960 as alimony; and (6) $50 a month for the support and maintenance of herself and minor children. It is argued in this connection that the decree of the trial court, and also that of the Supreme Court affirming it, in so far as they relate to the Athena property, were outside of the issues, and therefore void. This contention presents

for solution a unique as well as difficult question. Mr. Justice CLARKE, of the North Carolina Supreme Court, in volume 3, Cyc., at page 489, states the rule upon the subject thus: "An appellate judgment which is clearly void for want of jurisdiction may be disregarded in the court below, but not for fraud or mere irregularities." If, therefore, in the trial of the proceeding in which plaintiff was decreed the realty out of which she claims the moneys here sought to be collected, the pleadings presented no issue showing that she claimed the property in her own right, and the trial court was for that reason without jurisdiction in the first instance to make any decree concerning the property, the decree would be void, and subject to a collateral attack in the manner here presented; otherwise it is not subject to attack and must stand as the law of the case. 23 Cyc. 1055.

2. There may have been some question in the first instance whether a cause of suit, having for its purpose the determination, or quieting of the title to the individual property of either of the parties, was properly united with a cause of suit involving marriage rights, except the property rights for which provision is made in sections 511, 512, 513, B. & C. Comp. *Wetmore* v. *Wetmore,* 40 Or. 332 (67 Pac. 98). But, whatever may be the rule on the subject, no objection thereto having been made by either of the parties, they impliedly consented to a determination of their respective rights concerning the realty mentioned in the pleadings, which determination was subsequently ratified and acquiesced in by Taylor in executing the deed and his wife accepting the same, according to the tenor of the decree. It is true that it appears that in the divorce suit this plaintiff alleged that her husband, the plaintiff therein, was the owner of the lots in Athena, being the "certain property" alluded to in the complaint herein, to which allegation her then husband made no denial; but, notwithstanding this averment and the implied admission, the trial court, in its

findings of fact and decree, held Mrs. Taylor to be the owner of the legal title thereof from the time it was given to her by her then husband, and the owner of the equitable title at all times after the date of the sale and mortgage. It thus appears that the realty concerning which it is maintained the decree was void was specifically mentioned in the pleadings in the former controversy, thereby becoming a part of the subject-matter of that suit, and accordingly within the jurisdiction of both the trial and the appellate courts. Both courts were therefore fully authorized to enter a decree of some kind in reference thereto.

3. A decree was entered, and the question as to whether it was erroneous becomes unimportant, for the only question with which we can now be concerned goes to the jurisdiction, or the right to consider their interests with respect to the realty as a part of the subject-matter of that suit. This must be tested by inquiry relative to the right to enter any decree, and not as to whether a decree was improperly entered. Considered thus, it is obvious that the court acted within its jurisdiction, and that, if it acted erroneously, the error was such as could have been brought to the court's attention while pending on appeal, and before the cause was finally closed. No question in that suit, however, was raised or presented here concerning this alleged irregularity. It was not suggested in any manner that the holding was in conflict or inconsistent with any of the issues, from which it follows that, when the time for rehearing elapsed, the decree of this court became final, and consequently the law of the case, and not subject to review on any other appeal, or in any other proceeding in any court in which the question might arise. Among the authorities recognizing and applying this rule are: *Trust Co.* v. *Coulter,* 23 Or. 131 (31 Pac. 280) ; *Stager* v. *Troy Laundry Co.,* 41 Or. 141 (68 Pac. 405) ; *Baker Co.* v. *Huntington,* 48 Or. 593 (87 Pac. 1036: 89 Pac. 144). And more directly in point:

*Scottish American Co.* v. *Reeve,* 7 N. D. 552 (75 N. W. 910) ; *Pollock* v. *Cohen,* 32 Ohio St. 514; *Damon* v. *DeBar,* 94 Mich. 594 (54 N. W. 300).

4. Coming now to a consideration of the sufficiency of evidence adduced, and of points urged relative to the admission thereof, it appears: That the proof on the part of the plaintiff tends to show that the defendant, as plaintiff's agent, rented the property and received the rent therefor in the sum claimed; that he made a sale of the realty and received not less than $1,000 as a part payment thereon, none of which has been paid to plaintiff. In support of plaintiff's title, there was offered, and, over objection, admitted in evidence, the judgment roll in the divorce proceeding. In offering the judgment roll in evidence, plaintiff's counsel stated that it was introduced for the sole purpose of establishing title to lots 11 and 12 in block 1 in Kirk's addition to the town of Athena, referred to in the latter part of the trial court's finding of fact No. 13, contained in the judgment roll offered. This was followed by admission for the same purpose, and without objection, of the mandate of the Supreme Court in the same cause. A motion for nonsuit was interposed and denied, the ruling on which is included among the errors assigned. An order overruling a motion for nonsuit will not be disturbed when the omission, if any, is afterwards supplied by either of the parties to the proceeding. *Crosby* v. *Portland Ry. Co.,* 53 Or. 496 (100 Pac. 300) ; *Trickey* v. *Clark,* 50 Or. 516 (93 Pac. 457).

5. Under this rule the adequacy of the motion must be considered with reference to the entire record submitted, which in the case at bar, if the proof adduced was admissible and properly presented, discloses facts entitling the cause to be submitted to the jury; and the motion was properly denied.

6. Under the seventh, eighth, and ninth assignments it is maintained that the court erred in admitting in

evidence, on behalf of plaintiff, the judgment roll, and in not permitting the entire record, of which that offered was a part, to be taken to the jury room. We know of no reason why any part of the record, except that bearing upon the subject for which it was introduced, should either be read to the jury, or taken to the jury room. This is a matter largely in the discretion of the trial court. The parts of the record pertaining to the matters sought to be proved should be produced; nothing further is required, nor is it expected that papers bearing upon immaterial points, merely because a part of the judgment roll, should be turned over to the jury for their examination. 10 Enc. Ev. 788; *Walker* v. *Doane,* 108 Ill. 236.

7. This brings us to a consideration of the sufficiency of the plea of former adjudication and estoppel. Since the real property, out of which rents and other moneys sued for came, was the individual property of plaintiff, and did not grow out of the marriage relation, neither the title to such realty nor the proceeds arising therefrom could, if timely objections had been made, have been litigated in the divorce proceeding. *Huffman* v. *Huffman,* 47 Or. 610 (86 Pac. 593 : 114 Am. St. Rep. 943). But that the title to the realty was in fact adjudicated, or at least determined as an incident of the divorce proceeding, we have heretofore held, and it remains to be seen whether the moneys collected by defendant for rent and on sales was also litigated as an incident to such suit. Defendant offered in evidence the entire record and proceedings in the divorce suit, supplemented by an offer to adduce oral testimony in support of his claim that everything in issue here was tried out and considered in the former proceeding in connection with the title to the realty there adjudicated, to which objections were sustained, and the ruling of the court thereon assigned as error.

8. In its findings of fact the circuit court referred to the real property of both parties as having been accumu-

lated by their joint earnings during coverture, including therein a description of the Athena lots, but made no specific reference to any of Mrs. Taylor's personal property. This feature, it is argued, discloses that when the trial court decreed that Mrs. Taylor was the owner of the Athena property, and of the 160 acres of additional land, and directed Taylor to execute to her a deed therefor, it was with the view that this should be in full settlement of all interests of whatever nature and kind she might have in the real and personal property owned by either. And this may have been the intention so far as it related to any property mentioned in the pleadings, or issues, or otherwise brought in question—the choses in action here involved not even being suggested therein—but it overlooks the legal phase that the court has jurisdiction under the statute only to award to either party in a divorce proceeding an interest in the property of the other as provided in Section 511 of the Code (B. & C. Comp.) which section directs that the court shall decree to the party not in fault, an undivided one-third interest in the realty of the other. As held in *Huffman* v. *Huffman*, the court has no power to enter a decree affecting the interest of either, in the personalty of the other. The property involved in this proceeding consists of choses in action, and hence is personalty as to which, in the absence of some waiver of rights by, or without the consent of Mrs. Taylor, the court had no power to enter a decree affecting her interests therein, especially since it was not in any manner made an issue. No reference whatever can be found to the claims here involved in the record of the divorce suit offered in evidence. Furthermore, the findings of fact—if they are entitled to be considered at all in this proceeding—must be construed in connection with the conclusions of law, decree, opinion, and mandate of the Supreme Court or decree thereon, from which it is manifest that Mrs. Taylor originally held the legal title to the Athena property, and has, at all times since

the attempted sale thereof, held the equitable title, and while the property, taken as a whole, was acquired by them since their marriage by reason of their joint efforts, labors, etc., it became her individual property, as did that held by Taylor in his own name; and these findings, when construed with the rest of the record mentioned, amount merely to a conclusion of the court to that effect.

9. Moreover, the findings of fact are not entitled to consideration in this proceeding to the extent that they may be in any manner inconsistent with the decree as affirmed on appeal. As held in *Gentry* v. *Pacific Live Stock Co.*, 45 Or. 233 (77 Pac. 115) and *De Bow* v. *Wollenburg,* 52 Or. 404 (97 Pac. 717), an affirmance by the Supreme Court of a decree of the circuit court does not necessarily sustain the findings of fact of the trial court. Such suits are tried *dè novo* on appeal, and, "when the decree is definite and certain, the opinion of the court cannot be used to show what matters were considered or determined. 1 Van Fleet, Former Adjudication, § 278. Where, however, the decree is ambiguous, as in this case, or fails to show upon which of several issues it is founded, the opinion may, we think, be examined to determine what point was actually decided. *Strong* v. *Grant,* 13 D. C. (2 Mackey), 218; *Pepper* v. *Donnelly,* 87 Ky. 259 (8 S. W. 441); *Legrand* v. *Rixey's Adm'r,* 83 Va. 862 (3 S. E. 864).

10. In its conclusions of law based upon its findings, the trial court recites "that the defendant is entitled to a deed from the plaintiff conveying to her lots 11 and 12 in block 1 of Kirk's Third addition to the town of Athena, in Umatilla County, Oregon, free of all incumbrances, liens, and claims of every kind and character, and that defendant is entitled to have and to hold the same in her name, as her own separate property." In the decree the lower court declares Isabella Taylor, her heirs and assigns, to be the owner in fee simple of the Athena lots, with other realty there mentioned, the effect of

which was clearly intended to be that from the date of the entry of the decree, she should become the holder of the legal title. The date of the inception of her right to the legal title, and the period of time during which she was the holder of the equitable title, are not clear from the decree; but this is illuminated by the opinion of this court in *Taylor* v. *Taylor,* 47 Or. 47 (81 Pac. 367), with reference to which it is stated that: "The defendant at one time also held the legal title to the lots in Athena, which she and the plaintiff conveyed to a purchaser who was unable to pay the price agreed therefor, whereupon the lots were conveyed to the plaintiff. It will thus be seen that the real property decreed to the defendant was equitably hers before this suit was taken." It is manifest therefore that it was intended to be held that this property equitably belonged to Mrs. Taylor from the date of the execution of the mortgage under the sale, which date definitely appears from the testimony adduced by plaintiff. It follows that when we apply the rule quoted from *Gentry* v. *Pacific Live Stock Co.,* 45 Or. 233 (77 Pac. 115), in the construction of the decree of this court, this real property was the individual property of Mrs. Taylor, in which her husband had no interest whatever. Although it was acquired through dealings with her husband since their marriage, it did not grow out of the marriage relation. The expression with reference to "property growing out of the marriage relation" has reference only to that class of property the interest in which, by either the husband or wife, attaches by operation of law; such, for example, as dower, curtesy, tenancy by the entirety, or in case of divorce, the interest for which provision is made in Section 511, B. & C. Comp.

11. The question then arises whether plaintiff can maintain an action against her former husband for moneys arising out of her estate and collected during coverture, and which he made no express promise to

repay. At one time in the history of the litigation upon this subject, a woman could not maintain an action at law upon an implied contract arising during coverture, but was required to resort to the equitable forum in order to assert her right. *Pittman* v. *Pittman,* 4 Or. 298. Later, however, there became awakened in the minds of those in control of the legislative department of our State, a higher sense of justice, which recognized that a woman has rights that even her husband is bound to respect. Consequently the law was amended upon the subject by extending to the wife, as well as to the husband, the same right of action or suit with reference to each other, as applied to any other parties. Sections 5244, 5245, 5249, B. & C. Comp. These sections of the statute were construed and applied by this court, holding to the above effect, in *Grubbe* v. *Grubbe,* 26 Or. 363 (38 Pac. 182), making a discussion of the reasons for this rule unnecessary. In *Webster* v. *Webster,* 58 Me. 139 (4 Am. Dec. 253), which is a well-considered case upon the subject, the court held, under a statute similar to ours, that the wife, after divorce, may recover on promissory notes given her by the husband during coverture. Sustaining the same principle: *Carlton* v. *Carlton,* 72 Me. 115 (39 Am. Rep. 307); *Flattery* v. *Flattery,* 91 Pa. 474. Much of the apparent conflict among the cases bearing on the question is occasioned either by there being no statutes on the subject, leaving the common-law rule in force, or else the statutes construed differ from those in force here.

This confronts us with the question whether the awarding of alimony to plaintiff and decreeing that her husband execute to her a good and sufficient deed to the realty to which he held the legal title, and with which he subsequently complied, constituted an adjudication of the monetary transactions between them arising out of such real estate. As held in the case of *Grubbe* v. *Grubbe,* 26 Or. 363 (38 Pac. 182), a married woman

with respect to her individual property, whether real or personal, may sue and be sued the same as a *feme sole,* without reference to whether the transaction is with her husband or with any other person; and, as before stated, the rule as announced by former decisions of this court is to the effect that a judgment or decree is final as to every matter actually determined, and that might have been litigated or decided, as an incident thereof. To this rule, however, exceptions are disclosed in nearly every decision upon the subject. In *Ruckman* v. *Union Ry. Co.,* 45 Or. 578, 581 (78 Pac. 748, 750: 69 L. R. A. 480), after announcing the general rule, and holding that, when an action is upon a definite claim or demand, the former judgment can only operate as a bar or an estoppel as against matters actually litigated, or questions directly in issue in the former action, Mr. Justice BEAN observes: "This distinction should always be kept in mind in considering the effect of a former judgment or decree: If the second action or defense is upon the same claim or demand, the former judgment is a bar not only as to matters actually determined, but such as could have been litigated; but, if it is upon another claim or demand, the former judgment is not a bar, except as to questions actually determined or directly in issue."

Now, measured by this rule, does the case at hand come within the principle first stated, or within the second? It is obvious that this action was not brought upon the same claim as was determined in the former proceeding. In the divorce suit the title to the realty was decreed and no mention made of any agency existing between the parties, or concerning the collection of rents, or of other money transactions, either in any of the findings or in the decree; but their respective rights to realty owned by each were mentioned, ascertained, and decreed. We must assume therefore the other features were not involved, from which it follows that no

question is entitled to be presented in this action relative thereto. The title to that property was settled, and plaintiff now seeks to recover for moneys coming into defendant's hands growing out of, but segregated from, such property.

Taylor was not the tenant of his wife, but her agent. "Where the wife has a separate estate, and the husband takes possession of it, and manages it for her, he becomes her general agent, and as such is accountable to her for the income, profits, or interest which he makes by use of the property." *Oliver* v. *Hammond,* 85 Ga. 323 (11 S. E. 655) ; *Grubbe* v. *Grubbe,* 26 Or. 363 (38 Pac. 182). This is not an attempt to collect rents from defendant for property claimed by him, but to compel him to pay over moneys collected as plaintiff's agent, for her use and benefit, which is as separate and distinct from the land itself as would have been grain severed from the soil and sacked and stored in a warehouse, or horses, or cattle, or even promissory notes. A case analogous, in that it involves some of the principles thus illustrated, is that of *Gentry* v. *Pacific Live Stock Co.,* 45 Or. 233 (77 Pac. 115), in which it was held that a determination of the effect of a contract under which Gentry entered into possession of the realty did not constitute an adjudication respecting the hay cut thereon by Gentry, and so held notwithstanding the hay was cut under the contract construed, and reference thereto made in the pleadings in the original suit. See *Gentry* v. *Pacific Live Stock Co.,* 45 Or. 233 (77 Pac. 115) ; *Pacific Live Stock Co.* v. *Gentry,* 38 Or. 275 (61 Pac. 422: 65 Pac. 597). In the former case, this court, in referring to the decision in the equity suit on this feature, holds: "The decree was a final adjudication as to the right of the company to maintain the suit, and is a bar to a subsequent prosecution of another suit by it against Gentry upon the claim or demand. In an action between the same parties upon a different claim or demand, however, it can operate

as a bar or estoppel only as to matters in issue and which were actually litigated and determined. *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916: 95 Am. St. Rep. 780); *Cromwell* v. *County of Sac,* 94 U. S. 351 (24 L. Ed. 195). Neither the title to the hay grown on the disputed premises nor the question of the rights of the respective parties thereto was in issue in the former suit, or litigated or determined thereby. The only question was the right of the live stock company to enjoin and restrain Gentry from violating the contract alleged in the complaint, and from trespassing on the premises and interfering with its possession and right thereto."

12. It is clear therefore that the question here presented comes within the exception quoted from *Ruckman* v. *Union Ry. Co.,* 45 Or. 581 (78 Pac. 748: 69 L. R. A. 480), and that the decree in the divorce suit is not a bar to this action, unless defendant is entitled to and can establish by extrinsic evidence that the matters here involved were there presented for consideration, and under the issues could have been, and were intended to have been, litigated, which feature will hereinafter be considered. This is an action between the same parties, and, while it relates to matters incident to the realty, the title to which was formerly determined, it is evident that it was neither litigated in the former proceeding, nor, so far as appears from the records, was it necessary that it should have been brought into that suit. Moreover, there is some doubt whether even the land itself was properly involved. *Bender* v. *Bender,* 14 Or. 353 (12 Pac. 713); *Weber* v. *Weber,* 16 Or. 163 (17 Pac. 866). But, for the reasons hereinbefore given, the title thereto must be conclusively deemed to have been settled, and the decree as there entered is the law of this case so far as it affects such property.

In *Glenn* v. *Savage,* 14 Or. 567, 573 (13 Pac. 442), Mr. Justice STRAHAN, after holding the judgment in that case to be a bar, because the matters involved were in

issue in the former proceeding, says: "There is no dispute as to the principle of law that an issue once determined in a court of competent jurisdiction cannot be again litigated, and may be opposed as an effectual bar to any further litigation of the same matter by parties and privies. The contention is as to its correct application. * * In *Caperton* v. *Schmidt*, 26 Cal. 479 (85 Am. Dec. 187), it is said: 'It will be seen, from the rule as above stated, that the matter adjudicated, to become as a plea a bar, or as evidence conclusive, must have been *directly* in issue, *and not* merely *collaterally litigated.* It must be a fact immediately found according to the pleadings—not that on which the verdict was merely based—*a fact in issue as distinct from a fact in controversy.*'" It is manifest, from the part we have italicized, that the claims involved could not have been determined in the divorce suit, and these views are in harmony with Section 748, B. & C. Comp., which reads:

"That only is deemed to have been determined by a former judgment, decree, or order which appears upon its face to have been so determined, or which was actually and necessarily included therein or necessary thereto."

They are also consonant with the principles enunciated in the following cases: *White* v. *Ladd,* 41 Or. 324, 333 (68 Pac. 739: 93 Am. St. Rep. 732); *La Follett* v. *Mitchell,* 42 Or. 465 (69 Pac. 916: 95 Am. St. Rep. 780); *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513, 517 (70 Pac. 523); *Hoover* v. *King,* 43 Or. 281 (72 Pac. 880); *Caseday* v. *Lindstrom,* 44 Or. 309 (75 Pac. 208); *Heilner* v. *Smith,* 49 Or. 14, 17 (88 Pac. 299); *Roots* v. *Boring Junction Lbr. Co.,* 50 Or. 298, 318 (92 Pac. 811: 94 Pac. 182); *Young* v. *Young,* 53 Or. 365 (100 Pac. 656).

The case of *Caseday* v. *Lindstrom* is analogous to the one under consideration so far as it relates to the first cause of action therein. In that case the plaintiff and defendant had formerly been husband and wife. The husband procured a divorce on the ground of cruel treat-

ment, and was awarded one-third interest in the defendant's real property, and in that proceeding there was involved and placed in issue by the pleadings a certain 45-acre tract of land. The decree awarding the divorce and one-third interest in defendant's realty was silent as to the ownership of the 45-acre tract. Later the defendant in that suit brought an action against the plaintiff therein upon two causes of action. It was averred in the first cause of action that the plaintiff during her coverture loaned to the defendant, her former husband, $420, which he agreed to pay, and that, in addition thereto, he, as her agent, collected and received sums of money belonging to her aggregating $672, none of which had been paid. As a second cause of action, she alleged that she, during her coverture, sold to her husband, the defendant, the 45-acre tract of land above alluded to for a certain sum specified, which he had neglected to pay. Judgment was demanded accordingly, and trial had, resulting in a judgment in her favor for $498.10 upon the first cause of action, and $1,061.50 upon the second cause, from which an appeal was taken. In passing upon the legal phases of the controversy, this court held that the matters connected with the second cause of action were litigated in the former proceedings, for which reason the judgment roll offered in evidence, showing that fact, was admissible, and by reason of which the cause was reversed and remanded. It will be observed, however, that the cause was not reversed on account of the claim asserted in the first cause of action, which claim, so far as we can discover from an examination of the briefs (volume 176, p. 178), is identical in principle with the first cause of action involved here. From an examination of the opinion, it will be observed that the court does not, as a matter of law, question plaintiff's right to maintain her first cause of action, nor in any way indicate that it was adjudicated in the former proceeding; and, as an inspection of the

issues presented by the briefs therein reveals that there was no mention of moneys there involved, it is evident that it was the intention of the court to recognize that this claim was neither incident to, nor litigated in, the divorce proceedings, and that the plaintiff could, as a matter of law, maintain an action for the recovery thereof; the court, so far as the first cause of action there presented was concerned, passing only upon the admission of evidence.

There is this difference, however, if it may be termed such, between the first cause of action in the Caseday case and the one under consideration: There the money had and received, for which judgment was sought, did not grow out of the real estate, but was for money collected that was due her from other parties. Here the money involved was collected for rents from property and for the sale of property to which plaintiff at one time held the legal title, but to which, when the transaction complained of took place, she held the equitable title. It then remains to be seen whether this distinction affects the legal status of the claim. That an action for money had and received may be maintained where one sells property belonging to another and fails to account for the money received therefor appears well settled (4 Cyc. 320: 27 Cyc. 860), and, as above stated, under our Code such rights between husband and wife in this respect are no different than between other persons. This confronts us with the inquiry as to whether the fact that the party receiving the money holds the legal title, and the person for whom collections were made the equitable title, can affect the remedy. It has been well said that: "An action for money had and received is an equitable action governed by equitable principles. * * It may in general be maintained whenever one has money in his hands belonging to another, which, in equity and good conscience, he ought to pay over to that other." 27 Cyc. 849; *Peterson* v. *Foss,* 12 Or. 81 (6 Pac. 397); *Hornefius* v. *Wilkinson,* 51 Or. 45 (93 Pac. 474).

It has been held that an action for money had and received cannot be maintained against one who receives the rent of land while in possession under a claim of title adverse to plaintiff. This holding is on the theory that, if it appears that the title is held adversely, no implied agreement to pay the rent to another can arise; but, where the possession is not adverse, the true owner is entitled to recover the rents received by another. 27 Cyc. 865. The mere fact that plaintiff held only the equitable title during the time when the rents were collected does not make it necessary that she resort to a court of equity for the adjustment of the claim, especially as in this case, where the amount can readily be ascertained and involves no intricate accounts. *Bresnahan* v. *Nugent,* 106 Mich. 459 (64 N. W. 458) ; *Harty* v. *Teagan,* 150 Mich. 77 (113 N. W. 594). "It is true that the title to land cannot be tried in an action of assumpsit for money had and received, and, for that reason, rents which have been received under an adverse holding cannot be recovered by the rightful owner in this form of action; but, where the possession is not adverse, the true owner is entitled to recover the rents which have been received by another. In such case it is money had and received to the use of the owner; and, as the person to whom the rent was paid would be compelled to account in equity, he may also be held responsible in the equitable action for money had and received." *Price* v. *Pickett,* 21 Ala. 741, 743.

The question, then, as to plaintiff's right to recover for the rents collected by defendant during the time when she held the legal title, including the period when she was the holder only of the equitable title, depends upon whether the defendant was in possession of the Athena property adversely to her. Plaintiff claims that defendant was acting as her agent. This defendant denies; but there was evidence sufficient to go to the jury on that subject. The question whether a husband

or wife may hold adversely to each other is involved in much doubt, for the presumption is that the possession of husband and wife inures to the benefit of the one holding the legal title. *Ramsey* v. *Quillen,* 5 Lea (Tenn.), 184. On this point—which is suggested by the fourth assignment of error—defendant admits in his answer, in effect, that plaintiff was the owner of the property, and seeks to avoid responsibility by averring that she received payment in trade at the store of her tenant, to September 1, 1904; and the denials, when construed together, amount merely to a denial that he collected any rent prior to the date mentioned, and a declaration to the effect that such as he collected since has been paid. Defendant first attempts to deny, but subsequently admits, by implication at least, the same facts by pleading payment in a specified manner—by disbursements for improvements, taxes, store accounts, etc. This eliminates from the case any question as to whether defendant, during the time he collected the rents, and other moneys, was claiming title adversely to plaintiff.

13. An application of the principles announced as the law in the following cases clearly settles, contrary to appellant's contention, the question relative to the admission of the records in the former suit, including all extrinsic proof and parol evidence offered to explain what was formerly adjudicated respecting matters not there in issue. *Packet* v. *Sickles,* 5 Wall. 580 (18 L. Ed. 550); *Russell* v. *Place,* 94 U. S. 606, 608 (24 L. Ed. 214); *Manny* v. *Harris,* 2 Johns. (N. Y.) 24 (3 Am. Dec. 386); *Smith* v. *McCool,* 16 Wall. 560 (21 L. Ed. 324); *Garwood* v. *Garwood,* 29 Cal. 521; *Taylor* v. *Dustin,* 43 N. H. 493; *King* v. *Chase,* 15 N. H. 9 (41 Am. Dec. 675). To admit extrinsic evidence for the purpose offered would be to recognize a right to establish an adjudication of facts not within the issues, hence not "consistent with the record." If, as contended, the decision upon the title to the lots—to which reference was made in

the pleadings in the former proceeding—was not proper, and the court's action thereon was erroneous, much stronger then must be the reason for holding that the matters here involved, which were not mentioned, could not have been adjudicated, and, if not entitled in law to have been considered, certainly extrinsic evidence cannot be admitted to show either a consideration or determination thereof, and error cannot be predicated thereon.

14. In support of the points presented by assignments 5, 12, and 13, it is argued that the court erred in not permitting the defendant to show that the rent of the building was applied in payment of store accounts run by and for the family, in the store of the tenant, and in refusing to admit proof of moneys expended by defendant in improvements, taxes, etc. The sections of the statute above alluded to with reference to the rights of married women only defined and established her status with reference to a rule of property, and contain no language by which the common-law rule of liability incident to the support of a family, or as to moneys expended upon the wife's property by her husband without her request, may be affected. "Although a wife's estate is secured to her separate use, the husband's common-law duty to maintain her during coverture and to provide family necessaries still remains, * * and, without an agreement on her part to pay for necessaries or household supplies, she will not, in the absence of an express statutory provision bind her separate estate, or be personally liable." 21 Cyc. 1444; *Moore* v. *Copley,* 165 Pa. 294 (30 Atl. 829: 44 Am. St. Rep. 664); *Oliver* v. *Hammond,* 85 Ga. 323 (11 S. E. 657); *Harrison* v. *Taylor,* (Ky.) 43 S. W. 723; *Nelson* v. *Spaulding,* 11 Ind. App. 453 (39 N. E. 168); *Chester* v. *Pierce,* 33 Minn. 370 (23 N. W. 539); *Dodge* v. *Knowles,* 114 U. S. 430 (5 Sup. Ct. 1197: 29 L. Ed. 144).

15. Under the provisions of Section 5239, B. & C. Comp., the husband and wife, or either of them, are chargeable with the family expenses, and may be sued

jointly in relation thereto. This section, however, was intended for the protection of creditors of the husband and wife, and not to change the common-law rule respecting their liability as between each other concerning such matters. Neither the line of questioning excluded by the court, nor the offer of proof made, tended to show an express contract on the part of plaintiff to pay the family account run at the store, or to offset the same against rent charged the tenant; nor does it appear that it was the purpose of the inquiry, or of the proffered testimony, to show an express agreement to that effect. In the absence of such express agreement, only the tenant could have successfully asserted a claim against her. There is nothing in the Code to indicate that defendant could avail himself of any liability created by statute between a wife and third parties. If defendant, as plaintiff's agent, rented the building to the merchant tenant, and made arrangements to apply the rent on the family account, it was not within his authority from his principal to do so, and amounted merely to the application of funds collected for his principal to the cancellation of an obligation, for which, so far as he and his principal (his wife) were concerned, he was liable. To illustrate: Assume A. and B. were partners, and A. purchases from C. goods for which as between the partners A. is under obligation to furnish, and A. settles with C. out of individual funds in his hands belonging to B. Could it legally be held that, because it happened to be an instance where C. could hold the partnership for the goods purchased, A. would not have to account to B.? Certainly not. So it is here. While under the Code the merchant tenant could hold either on the account, this privilege in no way entitled defendant to use his wife's individual funds to cancel an account which as between them the law imposes upon him individually to provide for.

16. Nor can the agency under which defendant is alleged to have been acting in running the property, in

the absence of a showing of ratification to that effect, be held to include the making of improvements or the payment of taxes, or other disbursements thereon, or in connection therewith. She is bound only by his acts within the scope of his authority. 21 Cyc. 1240. Nor does mere acquiescence or silence suffice; it must appear that her acts were clear and definite. No offer is made of proof to such effect, and without such offer defendant was not entitled to introduce evidence tending to show that the proceeds received from the rent were expended either on family accounts, or for improvements. 21 Cyc. 1426; *Geary* v. *Hennessy,* 9 Ill. App. 17; *In re Sturtevant's Estate,* 61 Conn. 465 (23 Atl. 826) ; *Scott* v. *Ford,* 52 Or. 288 (97 Pac. 99). The testimony offered and rejected was not entitled to go to the jury unless offered for such purpose, and so connected with the proof last indicated as to disclose either such express authority, or a ratification of the alleged disbursements.

Assignments 16 and 17 relate to instructions requested but refused, and to instructions given by the court, to which exceptions are taken, and involve only such points as are above determined.

17. From these views I am of the opinion that no errors prejudicial to defendant are disclosed by the record, and the judgment of the circuit court should, accordingly, be affirmed.

But my Associates are of the opinion that the provision in the decree in the divorce proceedings for the benefit of the wife, granting her a money allowance and specific real property, was with the evident intent of the court that such allowance should amount to a division of the property accumulated by their joint efforts during coverture, and a settlement of all rights growing out of the use of such property, and that, after final adjudication in the Supreme Court, both parties having acquiesced therein and accepted the benefits thereof, they must now be deemed to have finally settled and quieted all claims

theretofore existing between them respecting such property, and arising therefrom; but, as it is admitted by defendant that certain rents have been received by him since the making of his deed, plaintiff is entitled to recover to that extent.

They conclude therefore that the cause should be remanded for such further proceedings as may not be inconsistent with their views as thus announced, and so direct.                     REVERSED: REHEARING DENIED.