## DODGE & Another *v.* KNOWLES.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Submitted January 9, 1885.—Decided April 13, 1885.

Neither the liability for provisions supplied at a dwelling house where a husband and wife and their children are living together, nor a promissory note given by the husband, describing himself as trustee for the wife, in payment for such supplies, can be charged in equity upon the wife's separate estate, without clear proof that she contracted the debt on her own behalf, or intended to bind her separate estate for its payment.

When the decree below is for a sum which gives this court jurisdiction on appeal, and the appellee makes no appearance here, but expressly declines to do so, after notice to him by order of court, it is too late to offer proof that the amount involved does not give jurisdiction.

An appeal bond is essential to the prosecution of a suit in this court, if it is demanded, but not to the taking of the appeal in the court below.

When security on appeal is not furnished until after the term at which the appeal is taken, failure to cite the appellee does not deprive this court of jurisdiction.

Bill in equity. The facts are stated in the opinion of the court.

*Mr. J. Holdsworth Gordon* for appellants.

No appearance for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an appeal by the children and heirs at law of Frances I. Dodge, a married woman, deceased, from a decree ordering her real estate to be sold for the payment of debts alleged to have been due from her to the appellee, upon a bill filed by him, in behalf of himself and other creditors who might come in, against the husband in his own right and as trustee and executor of the wife, and against her children and various persons interested in the real estate.

The following facts were undisputed: By an ante-nuptial settlement, executed on January 22, 1852, Mrs. Dodge (then Frances I. Chapman) conveyed all her real estate to Mr. Dodge, in trust, to hold the same for her sole and separate use and benefit during her life, and so that the same, and the rents and profits thereof, should not be liable for his debts; " or in any way subject to his control or contracts, except so far as is consistent with the provisions of this contract; " and to permit her, by herself or her attorney appointed by writing under her hand, to collect and receive the rents and profits from time to time accruing, and to dispose of the same as she might see fit, for her own separate use and benefit; and if she should, by writing under her own hand and seal and attested by two witnesses, direct the leasing or the absolute sale of the real estate or any part thereof, then the trustee should lease or sell and convey the same accordingly, and collect the proceeds of any sale, and invest them in his name as her trustee, in such a manner as she might approve and require, " and hold the said investments when made, for the same uses, trusts and purposes, and with the like power and authority, and subject to the like limitations, as are hereinbefore declared of and concerning the original trust subject; " and it was provided that the wife, notwithstanding her coverture, might by will devise and dispose of the estate, or any part thereof, as she might see fit, and the trustee should hold and dispose of the same accordingly; and further provisions were made for the disposition of the estate in case she should make no will.

On January 25, 1876, the wife died, leaving three children, and a will, by which, by virtue of the power of appointment

reserved to her in the marriage settlement, she devised all her real estate to her husband in trust for the use and benefit of two of her children, and appointed him executor, and made no provision for the payment of debts.

The plaintiff was a retail grocer, and at different times from 1870 to 1875 delivered groceries at the dwelling house where the husband and wife and their children resided together, and received from the husband, in payment therefor, or in renewal of other similar notes, promissory notes signed by him in this form, " F. Dodge, trustee for Fannie I. Dodge," payable to the plaintiff or order.  At the time of the wife's death, the plaintiff held four such notes, payable at various periods not more than four months after date, for sums amounting in all to $2,171.61, and interest, and had delivered groceries to the amount of $120.10, for which no note had been given.

The personal property left by Mrs. Dodge was exhausted by a distribution made by her executor among her creditors, under a decree of the Probate Court, by which the plaintiff received a dividend of $117 upon his claim.

It was further alleged in the bill, and denied in the answer of the children, that at the time of the giving of the four notes, and for several years before, Mrs. Dodge was indebted to the plaintiff in a large sum of money for groceries furnished to her, on the credit of her sole and separate estate, for the maintenance of herself and her children and her husband, he being insolvent and entirely without property ; and that she caused him for her to make and deliver the notes to the plaintiff ; " all which said indebtedness said Frances I. Dodge declared was chargeable to her sole and separate estate, upon the faith of which it was incurred, it having been represented to the plaintiff that her intention to fully secure the same by a proper conveyance in trust had been from time to time before her death prevented by her physical condition;" and that at the time of her death there was also due to plaintiff the sum of $120.10 on open account for groceries furnished as aforesaid.

The material parts of the testimony introduced by the plaintiff were as follows :

The plaintiff testified : " The groceries were furnished to Mrs.

Fannie I. Dodge. They were furnished to the credit of Mrs Dodge. The four notes were received in part renewal of other notes and a running grocery account. Mrs. Dodge is also indebted to me in the sum of $120.10 for groceries furnished upon her faith and credit. These groceries were delivered at her dwelling house. They were ordered by Mr. Dodge and the servants from time to time. Occasionally Mrs. Dodge was in the store and ordered some. These articles were furnished upon the credit of Mrs. Dodge, because I expected Mrs. Dodge to pay me for them. I did not expect Mr. Dodge to pay for them, because Mrs. Dodge was looked upon as being worth means, and Mr. Dodge not. Mr. Dodge never offered to pay me this account, or any portion of it, or to give his own note for any portion of it. He has handed me money which has been placed to the credit of the account. He has repeatedly told me that Mrs. Dodge had plenty of property to pay her debts, and would. He promised me security from Mrs. Dodge upon her real estate for this indebtedness. I did not get it, owing to Mrs. Dodge's death. I did not get a promise from anybody else that I should have real estate security. Mrs. Dodge never personally promised to give me real estate security. I did not see her during the latter part of the transaction." The plaintiff put in evidence a letter written to him on January 10, 1876, by Mr. Dodge, saying : " My wife is dangerously ill, and has been ever since I saw you. Of course I can do nothing yet as to the security promised you. As long as Mrs. Dodge lives, it requires her signature ; if she dies, I am still trustee for her heirs, and can then execute a deed to you as such trustee."

The husband testified that he was a clerk in an insurance office, and further testified : " The notes were signed ' F. Dodge, trustee for Fannie I. Dodge,' because I had no property. I had no property to give a note upon ; I was bankrupt. They were to be chargeable to her. They would not have been signed by me as trustee, unless it was for her and upon her responsibility. I never accompanied the delivery of those notes with the declaration that they were intended to bind her real estate— not that I can remember. These notes were given with the knowledge of my wife, under her general authority. The

amounts do not represent any indebtedness contracted by me. The articles furnished by Mr. Knowles were to eat. The family consumed them. My wife's family. Her children and servants comprised that family. These articles were purchased by her and on her credit. She made the exclusive arrangements for their purchase through me, as trustee. I was an inmate of the family during this time; my salary furnished the marketing, and I gave everything I had to the family. I could not support the whole family. She furnished medicines, wood and coal. I told Mr. Knowles verbally that Mrs. Dodge was ill with paralysis; that she could not be spoken to on business; that when she got well I would get her to give him real estate security if I could. I afterwards wrote him the letter of January 10, 1876. The promise given by me was in connection with the notes held by Mr. Knowles. By signing a note I could not make it binding on real estate. These notes were not intended by me to be binding upon her real estate any more than suit at law would make them so. I only meant that she had real estate enough to secure any debt she was making."

At the hearing upon bill, answers, a general replication and evidence, the Supreme Court of the District of Columbia at special term entered a decree dismissing the bill. Upon appeal to the general term that decree was reversed, and it was adjudged that the plaintiff's claim, as stated in the bill, be a lien upon the real estate included in the marriage settlement. 1 Mackey, 66. The children appealed to this court.

This being an appeal in equity, the facts as well as the law are to be determined by this court. The opinion of the court below and the brief of the appellant deal principally with questions of the manner in which the wife could charge her separate estate, and of the effect of her exercise of the power of appointment as making that estate assets for the payment of her debts. But it is unnecessary to consider either of those questions, because we do not find in the record any satisfactory evidence that the debts sought to be enforced were the wife's debts, or that she intended to charge them upon her separate estate.

The plaintiff's claims are for groceries supplied to a house-

hold in which the husband and wife and their children were, living together; and upon promissory notes given by the husband, describing himself as trustee for the wife, in payment for groceries so supplied. The obligation to pay for the supplies of the family is ordinarily a debt of the husband. Promissory notes given by the husband, though describing himself as trustee for the wife, bind him personally, and do not bind her estate, unless he is clearly proved to have had authority to give them in her behalf. The terms of the marriage settlement did not authorize the husband to contract any debts on the wife's account. The evidence introduced by the plaintiff consisted of the testimony of himself and of the husband. The plaintiff's testimony was rather to his own motives and reasons for charging the goods to the wife, than to any contract by her; and the husband's testimony was more to legal conclusions than to specific facts.

While the plaintiff testified in general terms that the goods were furnished to the wife, and upon her faith and credit, and gave, as his reason for furnishing them upon her credit, that he expected her to pay for them, and did not expect the husband to do so, because she was looked upon as worth means, and he was not; and stated that the husband promised him security from the wife upon her real estate; yet the only specific facts to which he testified, bearing upon the question who was his debtor, were that the groceries were delivered at the dwelling house; that they were ordered by the husband and the servants, and occasionally by the wife; and that the husband had handed him money which had been placed to the credit of the account. He did not testify to any express contract by the wife, and he admitted that she never promised to give him security on her real estate.

The testimony of the husband was hardly more direct. He testified indeed that the goods were purchased by the wife and on her credit, and that she made the exclusive arrangements for their purchase through him as trustee; that the notes were to be chargeable to her, and would not have been signed by him as trustee, unless it was for her and upon her responsibility; and that they "were given with her knowledge, under her

general authority." But he did not define or indicate the nature or extent of the general authority to which he referred; he did not testify that she ever promised to pay for the goods, or expressly authorized him to promise that she would pay for them; and he did testify that he never, so far as he could remember, accompanied the delivery of the notes with a declaration that they were intended to bind her real estate.

Such testimony is wholly insufficient to warrant a court of equity in decreeing that debts, which are *prima facie* the debts of the husband, should be considered as debts of the wife, and made a lien upon her separate estate.

*Decree reversed, and case remanded with directions to dismiss the bill.*

After entry of judgment, *Mr. Charles M. Matthews* for appellee, appeared only for the purpose of the motion, and on the 24th of April, 1885, moved to set aside the judgment and decree and to dismiss the appeal for the following reasons:

"1st. Because no citation hath been issued or served, the security herein having been taken and accepted at a term of the said Supreme Court of the District of Columbia subsequent to that during which said appeal was prayed, said Thomas Knowles not having entered a general appearance herein.

"2d. Because the matter in dispute did not exceed the sum of twenty-five hundred ($2,500) dollars."

Mr. Chief Justice Waite delivered the opinion of the court on this motion, May 4, 1885.

The facts on which this motion rests are these:

The final decree in the cause was rendered February 23, 1881. At the foot of the decree, and as part of the original entry, is the following:

"From this decree the defendants pray an appeal to the Supreme Court of the United States, which appeal is hereby allowed.

"By order of the court:                    D. K. Cartter,
                                        " Ch'f. Just."

Security upon the appeal was not taken until November 5, 1881, which was after the term when the decree was rendered. No citation was served on the appellee, but the appeal was duly docketed in this court November 11, 1881. The cause was called in its regular order for the first time January 9, 1885, and on that day submitted on printed brief by the counsel for the appellants, no one appearing for the appellee. On the 17th of January, the court, of its own motion, ordered "that this cause be re-argued, either orally or on printed briefs, to be filed on or before the first Monday in March next." The purpose of this order was to allow the appellee an opportunity to be heard. A copy was served on him personally on or about January 21, and he wrote the clerk, under date of February 28, as follows:

"Having been advised by counsel that no appeal has ever been perfected to the Supreme Court of the U. S. in the case of which you write, I would inform you that I respectfully decline to authorize an appearance to be entered in that court for me in that cause for any purpose whatever."

On March 2, the appellants again submitted the cause on a printed brief, no one appearing for the appellee. The case was taken under advisement and held until April 13, when the decree of the court below was reversed, and an entry made to that effect. On the 20th of April, the appellee came, and entering an appearance only for the purposes of his motion, moved to set aside and annul the judgment of reversal, and to dismiss the appeal, 1, because no citation had been issued or served, and, 2, because the value of the matter in dispute did not exceed $2,500.

As to the last ground of the motion, it is sufficient to say that the decree appealed from was for more than $2,500, and it charged the property of the appellants with the full amount. Upon the face of the record, therefore, our jurisdiction is complete. Such being the case, we are not willing to consider extrinsic evidence at this late day for the purpose of ascertaining whether the actual value of the property from which the collection must be made is sufficient to pay the whole debt or not.

The allowance of the appeal by the court while in session and acting judicially, at the term in which the decree was rendered, constituted a valid appeal, of which the appellee was bound in law to take notice. The docketing of the cause in time perfected the jurisdiction of this court. The giving of the bond was not essential to the taking, though it was to the due prosecution of, the appeal. It was furnished and accepted in this case before the cause was docketed here. Had this not been done we would have given the appellants leave to supply the omission before dismissing the appeal. All this was decided, on full consideration, in *Peugh* v. *Davis*, 110 U. S. 227.

It has also been decided that if an appeal was allowed in open court during the term in which the decree was rendered a citation was required, as matter of procedure, if the security was not furnished until after the term; but in *Railroad Co.* v. *Blair*, 100 U. S. 662, it was said: "Still, an appeal, otherwise regular, would not probably be dismissed absolutely for want of a citation, if it appeared, by clear and unmistakable evidence, outside of the record, that the allowance was made in open court at the proper term, and that the appellee had actual notice of what had been done."

The citation is intended as notice to the appellee that an appeal has been taken and will be duly prosecuted. No special form is prescribed. The purpose is notice, so that the appellee may appear and be heard. The judicial allowance of an appeal in open court at the term in which the decree has been rendered is sufficient notice of the taking of an appeal. Security is only for the due prosecution of the appeal. The citation, if security is taken out of court, or after the term, is only necessary to show that the appeal which was allowed in term has not been abandoned by the failure to furnish the security before the adjournment. It is not jurisdictional. Its only purpose is notice. If by accident it has been omitted, a motion to dismiss an appeal allowed in open court, and at the proper term, will never be granted until an opportunity to give the requisite notice has been furnished, and this, whether the motion was made after the expiration of two years from the rendition of

the decree or before. Here, before the cause came on for final hearing notice was given the appellee, by order of the court, that the appeal taken in open court was being prosecuted, and that a reargument at an appointed time was desired. In response to this notice, the appellee declined to appear, not because he had not been served with a citation, but because no appeal had been perfected. Had he complained of a want of citation, the omission might have been supplied if, on consideration, it should have been deemed necessary. But the order which was served on him to appear and argue the cause, if he saw fit, was of itself the legal equivalent of a citation for all the purposes of this appeal.

*The motions are denied.*