ADONIRAM J. LELAND v. THOMAS GOODFELLOW.

*Fraud—Bohemian oat note—Pleading—Declaration.*

Plaintiff brought an action on the case to recover damages for the transfer of his note, given for Bohemian oats, to a *bona fide* purchaser without notice, whereby he was forced to pay the note. And it is held that the declaration, which is substantially set forth in the opinion, fails to state a cause of action.

Error to Genesee. (Newton, J.) Argued December 5, 1890. Decided December 24, 1890.

Case. Defendant brings error. Reversed, and cause remanded. The facts are stated in the opinion.

*Rollin H. Person,* for appellant.

*Leland & Aldrich,* for plaintiff.

CAHILL, J. The plaintiff brought suit in the Genesee circuit court, and the defendant comes to this Court on demurrer to the declaration, which was overruled in the court below.

The plaintiff's declaration is in two counts. The first count sets out substantially that in September, 1885, plaintiff was engaged in farming in the township of Rose, in Oakland county; that some time in that month defendant came to plaintiff's farm, and brought with him 25

bushels of so-called "Bohemian Oats," which he offered
to sell to plaintiff, and also to give him a bond from the
Bohemian Oat Company, in words and figures as follows:

"222. A bond from the Bohemian Oat Company, to be
signed by our superintendent, J. M. Orcutt.

"Rose township, Oakland county, State of Michigan,.
Sept. 28, 1885.

"We do hereby agree to sell 50 bushels of Bohemian
oats for Mr. A. J. Leland, at ten dollars per bushel, in
cash or by note, for which the said A. J. Leland is to
pay 25 per cent. commission for selling.  Said oats to be
sold on or before December, 1886.

[Signed]    "J. M. ORCUTT, Sup't."

That the defendant offered to take in payment for such
oats,—

"And the bond, above set forth, which was to accom-
pany them, and which was to be delivered to plaintiff
with said oats should plaintiff purchase them, said plaint-
iff's note for the sum of $250, payable in February, 1887,
*so that plaintiff should not be called upon to pay said note
until said Bohemian Oat Company had sold for plaintiff
said 50 bushels of 'Bohemian Oats,' so called, as provided
for in said bond, and plaintiff had had time to realize from
the proceeds thereof sufficient money to pay such note.*  And
plaintiff says that he believed that, if he purchased said
oats of defendant, said Bohemian Oat Company would
perform all the conditions of said bond, above set forth,
and that, relying upon the fulfillment of the conditions
of said bond, and believing that they would be performed,
and that he would thereby be enabled to obtain sufficient
money to pay for such oats, he accepted the offer of de-
fendant, and then and there received from defendant the
bond and 25 bushels of oats, and gave defendant in pay-
ment therefor his note for $250, payable in · February,
1887."

Plaintiff further says that the Bohemian oats are and
then were but little, if any, more valuable than common
oats for any purpose whatever, and are not, and at that
time were not, worth to exceed 30 to 35 cents per bushel.
And the plaintiff says that the consideration which

induced him to give said note was not the 25 bushels of so-called "Bohemian Oats," but such consideration was the bond which formed a part of the contract, and that he would not, and defendant well knew he would not, have made said purchase and executed his note if it had not been for the agreements contained in the bond, on which plaintiff relied, that the company would, before December, 1886, sell for plaintiff 50 bushels of oats, so that he, plaintiff, would be enabled to pay his note in February following from the money that he would have received on the fulfillment of the conditions of said bond.

The declaration further states that although plaintiff raised the oats, and had them on hand at the time set for the fulfillment of the bond, neither defendant nor the Bohemian Oat Company ever sold or offered to sell 50 bushels of Bohemian oats, and that none of the conditions of the bond were ever performed in any manner. The declaration further says that the bond was a part of the contract on which the note was given; that defendant obtained no right to enforce the collection of said note until the Bohemian Oat Company had fully performed the conditions of the bond, and had sold for plaintiff 50 bushels of so-called "Bohemian Oats," at $10 per bushel, yet the said defendant did, a short time after obtaining such note, and before it became due, wrongfully and fraudulently dispose of said note to the First National Bank of Holly, a *bona fide* purchaser without notice, and that the plaintiff had been compelled, when the note fell due, to pay it.

It will be noticed that this count contains no allegation of fraud on the part of the defendant in the procuring of this note except such as may be said to be naturally inferred from the transaction itself. Neither is there any allegation that the plaintiff was ignorant of the nature of this transaction, or that he was misled or deceived in

any way by the defendant. The sole allegation of fraud against the defendant relates to his transfer of the note, which, it is claimed, he had no right to dispose of to a *bona fide* holder until after the Bohemian Oat Company had performed the conditions of the bond. But it is not alleged that defendant agreed not to transfer this note, nor that defendant agreed that plaintiff should not be called upon to pay his note, until the company had performed the conditions of the bond, and until the plaintiff had had time to realize from such performance sufficient to pay his note. That clause of the plaintiff's declaration which commences as follows:

"So that plaintiff should not be called upon to pay said note until said Bohemian Oat Company had sold for plaintiff said 50 bushels of Bohemian Oats,"—

and what follows, is not the averment of a fact, but is an obvious inference drawn by the pleader from the fact that the bond was, by its terms, to be performed before the note fell due. So far as anything appears from this count, the defendant was as innocent of any wrong in the transaction as was the plaintiff himself. Under such circumstances, it was not wrongful or fraudulent for the defendant to dispose of the note. It follows from this that the first count alleges no cause of action.

The second count was like the first, except that, in addition thereto, it is alleged that, a few days before the defendant called upon the plaintiff, one Alfred W. Hanmer came to the plaintiff's farm, and represented himself to be the agent of the Bohemian Oat Company, which he represented to plaintiff was a company incorporated under the laws of Michigan, with a capital stock of $100,-000, for the purpose of selling Bohemian oats, which Hanmer represented were much more valuable than any of the varieties of oats commonly raised by farmers; that said oats would be worth in the market $1 per bushel

for the purpose of being ground into oatmeal; that Hanmer further represented that a good deal of money was going to be made by a few men out of such oats, and that, for the purpose of introducing them, the company would sell a few bushels to not to exceed 15 farmers in each township, at $10 per bushel, and that said company would give to each of those who purchased said oats a bond, to be signed by the superintendent of said company, binding the company to sell for the person who should purchase any of such oats twice as many bushels of such oats as such person should purchase, at $10 per bushel, but charging such purchaser a commission of 25 per cent. for selling such oats; that Hanmer also represented to plaintiff that the Bohemian Oat Company had deposited with the Treasurer of the State of Michigan $100,000, to secure the fulfillment of the conditions of such bond; that Hanmer solicited plaintiff to give an order to said Bohemian Oat Company to deliver to him 25 bushels of said so-called "Bohemian Oats," and represented to plaintiff that, if plaintiff would give such order, he (Hanmer) would cause to be delivered to plaintiff, at the same time that the 25 bushels of oats were delivered, a bond binding said Bohemian Oat Company to sell for plaintiff 50 bushels of such so-called "Bohemian Oats," at $10 per bushel, by December, 1886; that Hanmer further stated that, if plaintiff would purchase the 25 bushels of oats, he might give his note for $250, payable in February, 1887, in payment for the same, and that plaintiff would never be called upon to pay such note until said Bohemian Oat Company had performed all of the provisions of such bond in every particular, and plaintiff had realized from the sale of such oats sufficient money to pay said note; that, relying upon the representations of Hanmer, plaintiff agreed to purchase 25 bushels of oats, and to give in payment therefor his note for $250, payable in

February, 1887, and in pursuance of this agreement he gave to Hanmer an order, signed by him, for the delivery of the oats, which order was in words and figures as follows:

"ROSE TOWNSHIP, September 28, 1885.
"MR. J. M. ORCUTT,
    "Superintendent of the Bohemian Oat Company,—
    "*Sir:* Please deliver at my house twenty-five bushels of Bohemian oats, weighing. fifty pounds to the bushel, for which I agree to pay J. M. Orcutt, or bearer, ten dollars per bushel, on delivery of the oats, in cash, or by note payable the first day of Feb., A. D. 1887; the company's bond to sell twice the above number of bushels to be delivered with this order. The purchaser holds a copy of this order. Any change is null and void.
                    [Signed]        "A. J. LELAND.
    "A. W. HANMER, Agent."

That, within a few days after he had given this order to Hanmer, the defendant came to plaintiff's farm, "and, in pursuance of .the agreement plaintiff had made with said Hanmer; as above stated, offered *to sell to plaintiff 25 bushels of oats, which defendant then and there called 'Bohemian Oats,' and to deliver to plaintiff a bond from said Bohemian Oat Company,*" substantially as set out in the first count of the declaration. The declaration alleges that all of Hanmer's representations were false and fraudulent.

There is no doubt that, under our previous decisions, the second count contains a good cause of action, if it substantially appears that the defendant is therein made responsible for the fraudulent representations of Hanmer. *Hess v. Culver,* 77 Mich. 598; *Knight v. Linzey,* 80 Id. 396; *Pearl v. Walter,* Id. 317.

It is claimed by defendant that there is no allegation in the declaration which legitimately connects the defendant with such misrepresentation; that the allegation in the declaration " that, within a few days after plaintiff

gave his order to Hanmer, said defendant came to the farm where plaintiff then resided, *and, in pursuance of the agreement plaintiff had made with said Hanmer, as above stated, offered to sell to plaintiff 25 bushels of oats,"* does not amount to an averment that defendant and Hanmer were acting in concert, nor that defendant knew of, or was in law or otherwise responsible for, the false statements of Hanmer; that nothing is alleged as a basis for the inference of the pleader that defendant came "in pursuance of the agreement made with Hanmer," beyond the fact that defendant came to plaintiff a few days after Hanmer had procured his order for a similar quantity of oats; that there is no allegation that defendant brought with him plaintiff's order, given to Hanmer a few days before, or that defendant said he came pursuant to such order; that, for all that appears in the declaration, Hanmer and defendant may have been strangers to each other, each acting as independent agents of the oat company, and, of course, not responsible for each other's representations. I do not see any escape from this position. The second count is defective in that it contains no sufficient allegation of defendant's complicity with and responsibility for the fraud of Hanmer. In other respects this count is like the first.

The judgment must be reversed, and the cause remanded, when the plaintiff will have 20 days in which to amend his declaration, if he desires.

The other Justices concurred.