## MRS. W. H. SCATES v. CANVAS DECOY COMPANY et al.

Affirmed. November 26, 1927.

No petition for Certiorari was filed.

1. **Husband and wife. The duty to support the family is primarily on the husband.**

   The duty to support the family is primarily on the husband and tho a married woman may have power to bind herself or her property for necessaries furnished her or her family, yet in order to render her or her property liable, it is essential that the parties should have understood that the transaction was an individual and personal sale to her, and not on the credit of her husband, the presumption being, where necessaries are ordered by a wife, living with her husband, that the sale is on his credit.

2. **Husband and wife. In the absence of statute there can be no legal claim against a married woman for necessaries furnished at her request.**

   There being no statute in Tennessee making a married woman liable for necessaries for the support of herself and family there can be no legal claim against her for necessaries furnished at her request.

3. **Husband and wife. A married woman living with her husband is presumed to have authority to order such goods as are ordinarily required for the family.**

   If the party dealing with the wife knows she is a married woman, living with her husband, and the order is of a character to indicate that it is for the benefit of her husband's family, he is bound to presume that she is acting for her husband, and cannot hold her personally liable, unless she expressly agrees to become so.

4. **Husband and wife. Evidence. Evidence held insufficient to show wife liable for debts contracted by her.**

   In an action by a wife to recover on a note where the defendants sought to establish a set-off for money advanced to the wife and goods bought by her and where the evidence showed that the money paid was really the husband's salary which had been turned over to her by the husband and that the goods were bought by her for family use and charged to the husband, held that the wife was not responsible for such debts and the defendants could not use such accounts as a set-off against her own note.

Appeal in Error from Chancery Court, of Obion County; Hon. V. H. Holmes, Judge.

Affirmed.

W. M. Miles and C. N. & H. H. Lannom, for appellee in error.

Pierce & Fry, for appellant in error.

OWEN, J.    The Canvas Decoy Company, a corporation, C. H. Cobb, C. E. Beck, A. J. Scates and J. P. Verhine have appealed from a decree rendered against them in the chancery court of Obion county in favor of the complainant for $3758.77, and costs of suit.    Complainant's bill was filed to procure a decree upon a note.    The Chancellor found that there was due $3417.07, principal and interest, and the note provided for ten per cent attorney's fees, which amounted to $341, making the total heretofore stated, for which complainant procured a decree.

On June 2, 1921, the complainant, Mrs. W. H. Scates, a married woman, made a loan of $18,000 to the defendant corporation, Canvas Decoy Company of Union City, Tennessee, which note was signed by the company and the other defendants herein mentioned as sureties, or joint makers.    The note was due six months after date and bore interest from date.    Various payments were made by the defendant company prior to the filing of the complainant's bill.    The defendants answered and insisted:    (1)   That W. H. Scates, the husband of the complainant, was indebted to the defendant company and that Mrs. Scates had endorsed the note of $18,000 to her husband and it was his property and debt, had the right to offset the amount W. H. Scates owed the company against the balance due on the note.    The answer was amended after proof was taken and it was insisted that the defendant had advanced to Mrs. Scates, the complainant, numerous sums of money and goods and that she received the same, which were necessaries; and while they had been charged to W. H. Scates' account they were entitled to recover for these items against the complainant, and by making these advancements and furnishing goods that Mrs. Scates had received they were sufficient to liquidate the note.    The Chancellor held against the defendants and rendered a decree for the amount complainant claimed.

The defendants excepted and perfected an appeal and have assigned three errors in this court, viz:

"First:    The Chancellor erred in his finding of facts to the effect that 'W. H. Scates had authorized the defendant corporation to let his wife have what she wanted, in money and goods; and knew that she was drawing money and purchasing articles of merchandise and knew that all was being charged to his account, we thus have an express promise to pay upon the part of W. H. Scates,' there being no proof in the record to sustain such finding of facts."

"Second:    The Chancellor erred in refusing to allow the Canvas Decoy Company to offset against the note in suit the sum of $1,102.66 for money advanced by it to Mrs. W. H. Scates by way of checks drawn by her on its account and by checks drawn by it payable directly to her, these checks being marked Exhibits Nos. 1 to 49, inclusive."

"Third: The Chancellor erred in refusing to allow the Canvas Decoy Company to offset against the note in suit the sum of $1894.-38 advanced by it to Mrs. W. H. Scates or to others for her benefit by means of checks drawn by the Canvas Decoy Company to her or to others in payment of her obligations, these checks being Exhibits Nos. 57 to 101, inclusive."

The original checks issued by the defendant company and charged to W. H. Scates have been sent up with the record. They begin February 7, 1921 and end December 9, 1922.

It appears that W. H. Scates, the husband of complainant, was a large stockholder of the defendant corporation; that he was an officer and employee of the defendant company during 1921 and 1922, and that he was a salesman on the road for this concern, which manufactures articles. When he was not on the road he had charge of the sewing room. Mr. Scates, the husband, testified that these items for which the defendant sought to charge Mrs. Scates were his debts; that he had not been able to get a settlement out of the defendant; that he is ready to pay the defendant if he owed the money; that most of these checks which are exhibits sent up were payable to W. H. Scates and by him endorsed to his wife, or drafts that he drew from the company for expenses and salary. The testimony of Mr. Enloe Childs, secretary and treasurer of the defendant company, shows that W. H. Scates was aware of the fact that his wife, Mrs. W. H. Scates was drawing money, buying merchandise, issuing checks and was having them charged to his account. These charges were made to W. H. Scates by Mr. Childs, the secretary and treasurer, and he testified that Mr. Scates made no complaint as to the charges. We quote from Mr. Child's testimony, as follows:

"Q. 18. As a matter of fact, everyone of these checks that you have referred to in your three batches, including those payable to W. H. Scates, were charged both on the journal and on the ledger against W. H. Scates, were they not? A. They were.

"Q. 19. By you or your direction? A. Yes.

"Q. 21. As secretary and treasurer of the Canvas Decoy Company, at the time these charges were made, you looked to and expected W. H. Scates to pay them, or take care of them, did you not? A. Of course, we expected them, like we do any one else to pay their account.

"Q. 22. On November 20, 1920, or at any time since that time, the Canvas Decoy Company has not had any account against Mrs. W. H. Scates, has it? A. No, there is no account against Mrs. Scates on the ledger.

"Q. 23. On that date and on December 11, 1925, or any time since that time, the Canvas Decoy Company has not had any account against Mrs. W. H. Scates, has it? A. No, sir.

"Q. 25. In Mr. Scates' transactions, while employed by the Canvas Decoy Company he would make withdrawals, or get the company to issue checks, or advancements to him, and on the other hand he would be credited with commissions, and salaries and dividends, or other methods of payment, if any, as set out on these ledger sheets—is that right? A. Yes, sir, it is."

Mr. C. H. Cobb, the president of the defendant company, testified, in substance, the same as did Mr. Childs, and we are of opinion that the Chancellor was not in error in holding as a fact that W. H. Scates had authorized defendant corporation to let his wife have what she wanted in money and goods. Both Scates and his wife testified to this effect. The undisputed proof shows that all of these items were charged to W. H. Scates.

As to the other two assignments of error, we will consider them together. Counsel for appellants have undertaken to segregate the drafts or checks issued by the defendant company to W. H. Scates, or drafts drawn by W. H. Scates on said company, payable to Mrs. W. H. Scates, or payable to other parties. In vouchers or Exhibits from one to forty-nine we find the following heading, viz: "The following is the list of checks not made payable to Mrs. W. H. Scates but bearing her endorsement." The first ten of these checks, amounting to $243.25 were drawn and charged to W. H. Scates prior to the execution of the note sued on herein. These forty-nine checks amounting to $1102.66 are almost all of the $25 denomination. It appears that W. H. Scates had a drawing expense account of $25 per week, and most of these checks were issued weekly. Mr. Scates testified that he turned over his salary and his expense checks to his wife and she endorsed the same after he had endorsed them, and she procured the amount of checks and used the same for household expenses. In the other exhibits, which are drafts and checks numbered from fifty-seven to one hundred and one, the heading is as follows: "The following is the list of checks for money received directly by Mrs. W. H. Scates or for her benefit and charged to the account of W. H. Scates." Ten of these checks, aggregating $1077.29 were issued prior to the execution of the note sued on. Thus, we have a total of $1321.54 charged to W. H. Scates prior to the execution of the note. Most of the other exhibits are for $25 each, and are in the form of drafts or checks drawn by W. H. Scates, payable to Mrs. Harry Scates, his wife, and drawn upon the defendant corporation. The last three were drawn upon blanks in various cities of the State of Florida. Two of them appear to be drafts drawn upon the blanks issued by banks in the State of Mississippi, evidently showing that W. H. Scates was away from home and mailing drafts to his wife for $25 drawn upon the defendant company as his expense account.

Mr. C. H. Cobb the president of the defendant company testified in regard to these various checks and exhibits which go to make up

the account the defendant is seeking to have Mrs. Scates pay, as follows:

"Q. 24. What went to make up the greater part of this account of Harry Scates to the Canvas Decoy Company, if you know? A. Part of it was for goods, bought from the Canvas Decoy Company, and charged to his account, the greater part was drawn out in money and checks issued to him in small amounts for living expenses and checks issued on bills of his, owing around town.

"Q. 25. Who bought the goods that you mention, if you know? A. It was dress goods and so on, bought by Mrs. W. H. Scates.

"Q. 28. (Cross-examination). The items charged against him, (W. H. Scates) on this ledger sheet and as evidenced by the various checks which you have filed, were advanced to him by the Canvas Decoy Company and charged against his account, is that not true? A. They were for money drawn by him and charged to his account; he was one of the largest stockholders and when he needed money he would have the bookkeeper issue him a check.

"Q. 11. Is it not a fact, that every one of these checks issued by the Canvas Decoy Company to W. H. Scates, and to Mrs. W. H. Scates, and every item of merchandise or goods bought by Mrs. W. H. Scates were charged against W. H. Scates, as set out on these ledger sheets? A. They were.

"Q. 12. Is it not a fact that the Canvas Decoy Company has never, at any time, had an account against the complainant, Mrs. W. H. Scates? A. I am not sure, but if it was, it was a short one, one of a few items.

"Q. 13. It was an inconsiderable amount, and has been paid and satisfied, if it was? A. It has been paid and satisfied."

We find as a fact that all of the items sought to be charged to Mrs. W. H. Scates are charges against W. H. Scates as shown by Exhibits from one to forty-nine and from fifty-seven to one hundred and one, inclusive. The note has always been the note of Mrs. W. H. Scates. These items charged to W. H. Scates are not the debts of Mrs. W. H. Scates, and she is not responsible for the same.

"The duty to support the family is primarily on the husband and tho a married woman may have power to bind herself or her property for necessaries furnished her or her family, yet in order to render her or her property liable, it is essential that the parties should have understood that the transaction was an individual and personal sale to her, and not on the credit of her husband, the presumption being, where necessaries are ordered by a wife, living with her husband, that the sale is on his credit." 13 R. C. L. p. 1284.

We have no statute in Tennessee making a married woman liable for necessaries for the support of herself and family. In the absence of statute there can be no legal claim against the estate of a married

woman for necessaries furnished at her request. Brown v. Sumner, 31 Vt. 671.

The editor of L. R. A. (N. S.) Vol. 33, p. 431, in the case of Clark v. Tennison has collated many valuable notes on the liability of a married woman for necessaries purchased by her. We quote from said notes as follows: ''In the absence of an express contract by a married woman to pay for necessaries, her property is not liable for the debt. Gunn v. Samuel, 33 Ala., 201; Freeman v. Holmes, 62 Ga., 556; Nelson v. Spaulding 11 Ind. App.; 453, 39 N. E., 168; Edminston v. Smith, 13 Idaho, 645, 14 L. R. A. (N. S.), 871, 121 Am. St. Rep., 294, 92 Pac., 842; Quisenberry v. Thompson, 19 Ky. L. Rep., 1554, 43 S. W., 723; Weber v. Zook, 21 Ky. L. Rep., 1027, 53 S. W. 1034; Campbell v. White, 22 Mich., 178; Paul v. Roberts, 50 Mich., 611, 16 N. W.; 164; Hirshfield v. Waldron, 83 Mich., 116, 47 N. W., 239; Fafeyta v. McGoldrick, 79 Mich., 360, 44 N. W., 617; Meads v. Martin, 84 Mich., 360, 44 N. W., 617; Meads v. Martin, 84 Mich., 306, 47 N. W., 583; Chester v. Pierce, 33 Minn., 370, 23 N. W., 539; Maxon v. Scott, 55 N. Y., 251; Strong v. Moul, 22 N. Y. S. R., 762, 4 N. Y. Supp., 299; Bradt v. Schull, 46 App. Div., 347, 61 N. Y. Sup., 484; Feiner v. Boynton, 73 N. J. L., 136, 62 Atl., 420; Miller v. Brown, 47 Mo., 504, 4 Am. Rep., 345; Bear's Estate, 60 Pa., 430; Gerger v. Clark, 79 Pa., 340; Robinson v. Bair, 2 Sadley (Pa.), 223, 18 N. N. C., 120, 3 Atl., 669; Reed's Estate, 4 Phila., 375; Warren v. Freeman, 85 Tenn., 513, 3 S. W., 513; Dodge v. Knowles, 114 U. S., 430, 29 L. Ed., 144, 5 Sup. Ct. Rep., 1108, 1197.

''Holding that the evidence failed to show a special promise to pay for certain dresses bought for herself and children, so as to make her liable for the debt, the court said, in Kegney v. Ovens, 18 N. W. S. R., 482, 2 N. Y. Supp., 319; 'The common-law rule that a married woman living with her husband is presumed to have authority from him to order such goods as are ordinarily required for family use is not changed by the statute regulating the rights and liabilities of married woman. If the party dealing with the wife knows she is a married woman, living with her husband, and the order is of a character to indicate that it is for the benefit of her husband's family, he is bound to presume that she is acting for her husband, and cannot hold her personally liable, unless she expressly agrees to become so.'

''Just what conditions operate to establish the liability of a married woman for necessaries are stated in the alternative in Powers v. Russell, 26 Mich., 179, thus: 'Now if he (the tradesman) knew that she was a married woman, living with her husband, and the goods were not of a character to indicate that they were bought for other than family use in the husband's family, and she did not claim affirmatively of purchasing them on her individual account, the natural inference would be that she was purchasing them on

her husband's account and for the use of his family; and she could not be made individually liable without an express agreement to become so, or that the goods should be charged or the credit given to herself.' ''

It will be noticed that the editor has cited the case of Warren v. Freeman, 85 Tenn., page 513, an opinion by Mr. Justice Caldwell, with a dissenting opinion by Chief Justice Turney. In that case, however, Mrs. Freeman was held liable, but she had executed a note binding her separate estate for the payment thereof. Said the court: "no personal liability can be adjudged against her. Only her separate estate which itself rests upon equitable principles, can, under like principles, be taken to meet her engagements entered into with reference to that estate.''

We are of opinion that there is no error in the decree of the Chancellor in sustaining complainant's bill and granting her the decree that was rendered in her favor. All of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed. The complainant will recover of the defendants and their surety on appeal bond the amount of the judgment rendered in the lower court with interest thereon from its rendition, and all of the costs of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.