## SAKS et al. v. HUDDLESTON et ux.

Court of Appeals of District of Columbia.
Submitted November 7, 1929. Decided
December 2, 1929.

No. 4796.

Albert E. Steinem and Milton D. Korman, both of Washington, D. C., for plaintiffs in error.

W. W. Millan and R. E. L. Smith, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. This is a writ of error to the municipal court in an action to recover $245, and interest, balance on fur coat and fox scarf purchased by defendant's wife for the aggregate sum of $253, she having paid $8 on account.

The case was tried by the court, without a jury. The evidence for the plaintiffs was substantially as follows: They conduct a retail fur and apparel business in Washington. Mrs. Huddleston, defendant's wife, called at their establishment in December, 1925, and looked at several articles of apparel, and during the same month purchased an American broadtail coat for the sum of $235, and, a few days thereafter, a fox scarf for the sum of $18. Plaintiffs knew that Mr. Huddleston was a Representative in Congress, and that he "would be good for any bill that he might contract." The account was carried in the name of Mrs. Huddleston as a matter of convenience, it being the practice of the firm "to carry practically all of their accounts in the names of the wives who make purchases from them, rather than in the names of their husbands, since it has been found to be inexpedient from a business standpoint, and is resented by the wives who make the purchases, to communicate with the husbands at the time of the sale and the extension of credit." But plaintiffs fully intended at all times to extend credit to the husband, although he "never asked for credit and had no part in the transaction and the transaction recited was the first plaintiffs ever had with Mrs. Huddleston." Early in 1926, plaintiffs wrote and telephoned Mrs. Huddleston "in an effort to secure further payments and told her that they would have to communicate with Mr. Huddleston unless she arranged to have him take care of the bill; that in the course of one of these telephone conversations Mrs. Huddleston suggested that Mr. Huddleston would pay more attention to the obligation if it was in the form of her note, and persuaded plaintiffs to accept (on July 3, 1926) a note from her as evidence of the indebtedness." No personal or telephone conversation was had with Mr. Huddleston at any time, but, after the note was given and the indebtedness still remained unpaid, plaintiffs sent two communications to Mr. Huddleston at the House of Representatives Office Building, demanding payment of him, which communications were not returned.

Thereupon suit was filed against Mr. and Mrs. Huddleston. Judgment was taken against Mrs. Huddleston by default.

Mr. Huddleston testified "that he had no knowledge of the purchases by his wife of the coat or scarf for which suit was brought; that he never authorized her to purchase said articles; that he had instructed her not to make any purchases on his credit; that during the time of his wife's transaction with plaintiffs, and long prior thereto and regularly thereafter, he gave his wife $75.00 each month to purchase her clothing, and instructed her to limit herself to this amount in making purchases for cash, and that he did not receive the communications addressed to him at the House of Representatives Office Building; that he had instructed his wife to make no purchases for credit; that it has been his custom for years to pay cash for all purchases for himself and his family; that he pays all household expenses and during the last year, paid more than $2,000.00 for his wife. on her personal account, in addition to the $75.00 given her on the first day of each month for personal clothing and in addition to all household expenses; that he did not know of the payment made by his wife on plaintiffs' account, and never heard in any way of her transaction with plaintiffs until served with summons in this suit."

The court "rendered a finding and judgment" for the defendant.

From the uncontradicted testimony of Mr. Huddleston it appeared that in 1925, when these purchases were made, "and long

prior thereto and regularly thereafter, he gave his wife $75.00 each month to purchase her clothing." Plaintiffs contend that the statement of Mr. Huddleston that "during the last year" (that is, during the year 1927) he had paid more than $2,000 for his wife on her personal account, in addition to her regular allowance "for personal clothing," and in addition to all household expenses, amounts to an admission that he did not consider the previous allowance of $75 a month a sufficient sum with which to purchase her clothing. We do not think the statement reasonably susceptible to the implication thus placed upon it. The transaction with plaintiffs occurred in 1925. It is apparent that the $2,000 payment during 1927 was for something other than "for personal clothing" and household expenses. It may have been for a trip to Europe, for medical services, or for some other legitimate personal expense for his wife. Moreover, it does not appear that plaintiffs had any knowledge of either the extent or character of the provision made by Mr. Huddleston for his wife. In short, there was no evidence of acts or conduct on the part of Mr. Huddleston conferring upon his wife an apparent authority to pledge his credit. In our view, the evidence justified a finding that the allowance of $75 each month "for personal clothing" was amply sufficient for that purpose.

The question, therefore, is squarely presented whether a wife, who has been furnished with ample means with which to pay cash for articles of clothing, may nevertheless purchase the same on her husband's credit. This important question has never been decided by this court, although it has received extended consideration in both English and American courts.

In Jones v. Gutman, 88 Md. 355, 41 A. 792, 794, it was held that, when a husband and wife are living together, and she is properly maintained, she has no implied authority in law to pledge her husband's credit, but whether she has actual authority to do so depends upon the facts of each case, and should be submitted to the jury. It was further held that, when a husband authorizes his wife to purchase goods from a particular tradesman, who is prepared to satisfy all her reasonable wants, she is not empowered, without his knowledge, to pledge his credit for goods bought from another tradesman, and he is not liable for purchases so made unless he subsequently approved them. The court observed that "the whole subject has been so exhaustively and satisfactorily discusssed in two English cases that we content ourselves with quoting liberally from them. In Jolly v. Rees, 15 C. B. (N. S.) 628, after laying down the law as we have stated it, Erle, C. J., proceeds to assign some reasons. He says: 'It is a solecism in reasoning to say that she derives her authority from his will, and at the same time to say that the relation of the wife creates the authority against his will, by a presumption juris et de jure, from marriage. * * * The husband sustains the liability for all debts. He should therefore have the power to regulate the expenditure for which he is responsible, by his own discretion, according to his own means. * * *' This case a few years later was reviewed, and the principles affirmed, in the house of lords, in the case of Debenham v. Mellon, 6 App. Cas. 24. * * * In the case last cited it was held that the question 'whether the wife had authority to pledge the husband's credit is to be treated as one of fact, upon the circumstances of each particular case,' and that marriage could not imply, by law, an agency on her part to bind him or pledge his credit, except in the case of a necessity which might arise when the husband has deserted her or compelled her to live apart from him without properly providing for her, 'but not when they are living together, and she is properly maintained; because then, in that state, there are no circumstances—no prima facie evidence—that the husband is neglecting to discharge his necessary duty, or that there is any necessary occasion for the wife to run him into debt, for the purpose of keeping herself alive or supplying herself with lodging and clothing.'"

In Wanamaker v. Weaver, 176 N. Y. 75, 68 N. E. 135, 137, 65 L. R. A. 529, 98 Am. St. Rep. 621, it was held that a husband living with his wife, and who supplies her with necessaries suitable to her position and his own, or furnishes her with ready money with which to pay cash therefor, is not liable for the purchase price of other goods sold to her, of the same character as necessaries, in the absence of affirmative proof of his prior authority or subsequent sanction, the question of the wife's agency being one of fact, and not a conclusion of law to be drawn alone from the marital relation. In its opinion the court cites with approval the decision of the House of Lords in Debenham v. Mellon, 6 App. Cas. 24, in which Lord Chancellor Selborne said: "It was argued that, because these articles were found to be in some sense 'necessaries' in their nature, the husband ought therefore to be bound. But, even if the husband and wife had been living apart, the husband would not be bound by reason of

such things being necessaries if he made a reasonable allowance to his wife and duly paid it: much less can he be bound in a case like this where they were not living apart, and when he made her an allowance sufficient to cover all proper expenditure for her own and her children's clothing." The court, in the Wanamaker Case, then said: "The conclusions reached in these cases are in accord with the rule as stated by Schouler and some of the decisions alluded to in this state, and we incline to the view that the rule recognized by them is the safer and better rule to follow. It compels the husband to pay in a proper case, and at the same time affords him some financial protection against the seductive wiles exerted by tradesmen to induce extravagant wives to purchase that which they really do not need. We do not participate in the alarm which appears to have possessed the learned justices of the Appellate Division on account of the possible inquisitorial examination to which the wives may be subjected. The anxiety of tradesmen to sell will be sufficient to protect them from any improper 'inquisitorial examination.'"

In McCreery & Co. v. Martin, 84 N. J. Law, 626, 87 A. 433, 47 L. R. A. (N. S.) 279, Ann. Cas. 1915A, 1, there was an attempt by plaintiffs to compel payment by a husband for goods purchased by his wife at plaintiff's store in New York. The purchase, which was made while the husband and wife were living together, constituted the first dealing with plaintiff, whose contention was that, the goods purchased being necessaries, the wife, by reason of the marital relation, had a right to pledge her husband's credit for their payment. The defendant sought to avoid liability by showing that he had furnished his wife from time to time, during the period in which these purchases were made, with money sufficient for all necessaries required by her and the family, and suitable for their position, and, further, that he had expressly forbidden her to run accounts against him in department stores. The court ruled that "the weight of authority supports the doctrine that a husband who is living with his wife, and who supplies her with necessaries suitable to his position and her own, or furnishes her with ready money with which to pay cash therefor, is not liable for the purchase price of other goods sold to her of the same character as necessaries, in the absence of affirmative proof of his prior authority to make them, or his subsequent sanction of such purchases."

After citing authorities, the court further said: "And this doctrine is, as we conceive, sound in principle. A wife has no power to make a contract binding upon her husband unless upon his authority express or implied. In cases where the authority is to be implied from the marital relationship and the cohabitation of the parties, the presumption which the law raises is based upon the obligation of the husband to supply necessaries to the wife. It may be that it is to be presumed that goods of the character of necessaries purchased by the wife on the credit of the husband are the very ones with which he was bound to supply her. But certainly this is not a presumption juris et de jure, and may be overcome by proof to the contrary. This duty which the law imposes upon the husband, and which he must discharge to the extent of his ability, is satisfied by a single performance. In other words, having once performed it, the law does not impose upon him the obligation of duplicating that performance. When he has supplied his wife with those necessaries which their station in life and his financial standing entitle her to have at his hands, or has furnished her with moneys sufficient to enable her to purchase them for herself, he is under no obligation to pay bills incurred by her for what would have been necessaries if he had not already supplied her therewith, but which are not, in fact, such, because of the precedent supply."

After further observing that a tradesman may readily ascertain by inquiry the fact of a wife's authority to pledge her husband's credit for purchases she desires to make, the court said: "The suggestion that such action on the part of the tradesman might readily be considered offensive, not only by the wife who seeks to make the purchases, but by the husband whose credit she seeks to pledge, is fully answered by what was said by Lord Justice Bramwell, in Debenham v. Mellon, 5 Q. B. D. 394, 400, viz.: 'If it be said that such a proceeding would offend the customer, I answer that that may be an excellent reason why the tradesman should not ask the question; but it is no reason for seeking to make the husband pay because the question is not asked.'"

In Baker v. Carter, 83 Me. 132, 21 A. 834, 23 Am. St. Rep. 764, the court observed: "The agency of the wife to purchase necessaries is only presumptive, and may be disproved by the husband by showing that he had abundantly supplied the house with all things necessary and suitable; or that he had furnished the wife with ample ready money for the purpose, and requested her not to purchase on credit; or had provided suitable places where all things necessary could be

540

had, and forbidden her to purchase elsewhere."

In Raynes v. Bennett, 114 Mass. 424, it was ruled that, to maintain an action against a husband for articles sold his wife without his authority, while they were living together, it must appear that he neglected her suitable support, and that the goods were reasonably necessary, having regard to his condition in life.

In Vaughan v. Mansfield, 229 Mass. 352, 118 N. E. 652, a suit for medical services rendered the wife and minor child of the defendant, the court stated that the evidence warranted a finding that the defendant had seen the plaintiff at the defendant's house, and that he knew the visits there were made by the plaintiff as a physician in response to calls from the wife of the defendant, and that there was evidence that the plaintiff had sent bills from time to time to the defendant's residence through the mail, and that there was no evidence that the defendant ever had forbidden the plaintiff to render, or the wife or child in the presence of the plaintiff to receive, the services of the plaintiff on his account. The court ruled that "under these circumstances the presumption of the agency of the wife, which is inferred from her relation to her husband as manager of the household, to pledge her husband's credit for medical services that are reasonably necessary for her or the family, is not rebutted by proof that the defendant privately had instructed his wife never to run any bills, and had given her money from time to time to pay all expenses when she told him she needed it." It is apparent that this decision is not in conflict with the decision in Raynes v. Bennett, 114 Mass. 424. See, also, 30 C. J. p. 590, § 124; 13 R. C. L. 1179, § 208.

We find nothing in prior decisions by this court or by the Supreme Court of the United States inconsistent with the rule announced in the foregoing authorities.

Dodge v. Knowles, 114 U. S. 430, 5 S. Ct. 1197, 1199, 29 L. Ed. 144, a District of Columbia case, was an attempt to charge the wife's separate estate for provisions supplied the family while the husband and wife and children were living together. The court said: "The plaintiff's claims are for groceries supplied to a household in which the husband and wife and their children were living together; and upon promissory notes given by the husband, describing himself as trustee for the wife, in payment for groceries so supplied. The obligation to pay for the supplies of the family is ordinarily a debt of the husband. Promissory notes given by the husband, though describing himself as trustee for the wife, bind him personally, and do not bind her estate, unless he is clearly proved to have had authority to give them in her behalf." After discussing the evidence, the court said: "Such testimony is wholly insufficient to warrant a court of equity in decreeing that debts, which are prima facie the debts of the husband, should be considered as debts of the wife, and made a lien upon her separate estate."

In Tyler v. Mutual District Messenger Co., 17 App. D. C. 85, the court merely stated the general rule that the wife is clothed with an implied authority to give orders for wearing apparel, furniture, provisions, and all such things as may fairly be presumed necessary for the decent maintenance of herself, her husband and family, but the question in the present case was neither involved nor considered.

In Dobbins v. Thomas, 26 App. D. C. 157, it was ruled that a contract made by a married woman for the exchange of real estate and for the purchase of personal property must, under the Code, be deemed to have been made with reference to her separate estate, and that the provisions of section 1177 of the Code, that the husband shall not be relieved from liability for necessaries contracted for by his wife, do not operate to relieve the wife from liability for necessaries contracted for independently of her husband.

Maschauer v. Downs, 53 App. D. C. 142, 289 F. 540, 542, 32 A. L. R. 1461, was an action for necessaries supplied defendant's wife and children while the wife was living apart from her husband without just cause. The court said: "A husband who is able, ready, and willing to support his wife, and who gives her no just cause to abandon him or leave his bed and board, cannot be compelled to support her elsewhere than at his own house, if he has one. His liability for necessaries provided by other persons for her support rests entirely upon the ground of his neglect or default."

We are of the view that the rule to be deduced from the authorities we have reviewed is just and salutary. Its tendency will be to check extravagance (one of the most pronounced of modern evils), and at the same time protect husbands, who in good faith have made such provision for their wives as their means and station in life warranted, from debts thoughtlessly and needlessly contracted, and often beyond the capacity of the husband to pay. Moreover, it does not require the discernment of a Solomon to appreciate that the unauthorized purchase of goods by

a wife, whose husband has adequately provided for her, inevitably will have a tendency to disturb and possibly disrupt their conjugal relations.

The present day means available to merchants for the ascertainment of the moral and financial responsibility of patrons and customers are such that little apprehension need be indulged on account of the rule we have announced.

It appearing that the evidence fully justified the finding and judgment of the court below, the judgment is affirmed, with costs. Affirmed.