Argued January 21, modified March 25, petition for rehearing
denied April 22, 1953

# RYAN *v.* ROBERT RYAN HOTELS, INC.

### 255 P. 2d 130

134

*Claud H. Giles,* of Coos Bay, argued the cause and filed a brief for appellant.

*Joseph A. McKeown* argued the cause for respondent. On the brief were McKeown & Newhouse, and Wallace A. Johansen, of Coos Bay.

Before WARNER, Acting Chief Justice, and ROSSMAN, BRAND, TOOZE and PERRY, Justices.

TOOZE, J.

This proceeding was originally commenced as an action at law to recover money. It was brought by Jean Ryan (now Howes), as plaintiff, against Robert Ryan Hotels, Inc., an Oregon corporation, as defendant. In its answer to plaintiff's amended complaint, defendant affirmatively alleged grounds for an accounting and prayed for a decree and judgment against plaintiff. By stipulation of the parties, the case was tried to the court as a suit in equity. A decree and judgment in favor of plaintiff for the sum of $1,530.84 was entered by the court. Plaintiff appeals, and defendant cross-appeals.

Plaintiff's amended complaint alleged three separate causes of action against defendant: (1) for the

sum of $26,699.69, alleged to have been loaned and advanced to defendant by plaintiff; (2) for the sum of $4,085, alleged to be due plaintiff from defendant on account of services rendered by plaintiff as manager of the Tioga Hotel at Coos Bay, operated by defendant; (3) for the sum of $4,500, for and on account of a bank loan obtained for defendant's sole use and benefit, which plaintiff was compelled to pay.

By its answer defendant denied all the material allegations of plaintiff's complaint, except that it admitted that plaintiff was for a time employed as manager of the Tioga Hotel, operated by defendant. By way of cross-complaint against plaintiff, defendant specifically alleged as follows:

"I.

"That on or about the 20th day of May, 1947, the Plaintiff herein was elected and qualified as Secretary and Treasurer, and a member of the Board of Directors, of said corporation, and that her husband, J. R. Ryan, was elected and qualified as President, and a member of the Board of Directors, of said corporation, and that from said 20th day of May, 1947, down to and including the 31st day of August, 1948, the Plaintiff herein and the said J. R. Ryan did manage and control said corporation, and the moneys and funds thereof, and its operations referred to in Plaintiff's Amended Complaint and known as the Tioga Hotel, Coos Bay, Oregon; that during all of said time, Plaintiff herein acted as Secretary and Treasurer and Director of said corporation; that on said 31st day of August, 1948, the said J. R. Ryan resigned as President, Director and manager of said corporation, and the Plaintiff herein did thereafter, and to and including the 31st day of December, 1948, continue to act as Secretary and Treasurer of said corporation, and did act as the manager thereof, including the said Tioga Hotel operations.

"II.

"That during all the times herein mentioned, from the said 20th day of May, 1947, to and including the 31st day of December, 1948, the Plaintiff and the said J. R. Ryan did receive and disburse the funds of said corporation, and that the said Plaintiff and the said J. R. Ryan have never accounted to said corporation for the funds and moneys received and expended by them as officers and directors of said corporation; that the said corporation now has in its possession certain records of said corporation but that said records are not complete in that they do not show how certain of the moneys and funds of said corporation were expended, and that the Plaintiff herein should be required by the above entitled Court to account for all the funds and moneys of said corporation coming into her hands and expended by her, and to pay over to the Defendant herein such sum as may be found due said Defendant from the Plaintiff on such account; that demand has been made upon the Plaintiff for said accounting and that she has failed, neglected and refused to render said accounting."

Defendant then alleged that plaintiff was entitled to a credit of $2,835 for work performed by her, but as against such credit there should be charged to her certain items aggregating the sum of $4,655.26. These several charges were itemized. The only charges with which we are particularly concerned on this appeal are listed as follows: "the sum of $1,300.00, which sum was used for the purchase * * * of one diamond ring for plaintiff; personal withdrawals by plaintiff in the sum of $281.81, as set forth on Tioga Hotel withdrawal cards Nos. 8677 and 9202; withdrawals for living expenses for the said plaintiff and J. R. Ryan, including food and dry cleaning, from the 20th day of May, 1947, to and including August 31, 1948, in the

sum of $1,377.29; payment on the 4th day of May, 1948, to The First National Bank of Portland from corporation funds on personal note of plaintiff in the sum of $102.00."

Defendant further alleged that one Carlo DePetris claimed to have paid to said corporation on or about August 15, 1947, the sum of $20,000, for which he received a note of the corporation, executed by plaintiff, as secretary, and J. R. Ryan, as president, of defendant, and which promissory note is in the principal sum of $20,000 and repayable in annual installments of $2,000 each; that demand had been made upon plaintiff to account for the expenditure of said sum of $20,000, and that she had failed and neglected to do so; that plaintiff should be required to account for said sum of $20,000, and upon her failure to do so, she should be required to pay defendant the said sum, with interest at the rate of six per cent per annum from August 15, 1947, until paid.

It also is averred in the answer that on or about June 23, 1947, the plaintiff, as secretary, and J. R. Ryan, as president, of the corporation issued and delivered to J. R. Ryan 1,000 shares of stock in said corporation for an agreed price of $10,000; defendant asked that plaintiff be required to account for this sum of $10,000, and upon her failure so to do, that she be required to pay defendant said sum, with interest at the rate of six per cent per annum from June 23, 1947, until paid.

Allegations similar to those last referred to are then set forth regarding 500 shares of stock of the corporation issued to plaintiff on or about June 23, 1947, of the agreed value of $5,000.

Defendant then asserts the claim that because of

plaintiff's failure and refusal to account, it had been compelled to employ auditors and accountants and incur additional expenses, for the purpose of determining how the funds of the corporation received by plaintiff and J. R. Ryan were disbursed; it is then claimed that such costs and expenses in the sum of $3,000 should be charged against plaintiff upon the accounting.

By her reply, plaintiff denied all the material allegations of defendant's cross-complaint inconsistent with or contradictory to the allegations of her amended complaint.

The record discloses that J. R. Ryan is a San Francisco business man who has specialized in buying, selling, and operating hotel and similar properties.

In August, 1946, plaintiff and J. R. Ryan were married. They lived together as husband and wife until August 31, 1948, when they separated. A few months later plaintiff obtained a divorce from Ryan, the decree of divorce restoring to her her former name of Jean Howes.

Before and at the time of the marriage between plaintiff and Ryan, the said Ryan had associated with him in some of his business enterprises in California, one Jessie Titus and one Carlo DePetris.

Between September 10, 1946, and January 1, 1947, plaintiff advanced and paid to J. R. Ryan in cash the sum of $17,000; on June 6, 1947, she advanced to her husband the further sum of $2,000. The $17,000 was invested by Ryan, for and on behalf of plaintiff, in the Beresford and St. Andrews hotels, located in San Francisco. These hotels later were sold and the proceeds of the sale invested in the Uptown Hotel, also located in San Francisco. In the spring of 1947, owner-

ship in the Uptown Hotel was divided thus: a one-third interest in plaintiff; a one-third interest in J. R. Ryan; and a one-third interest in Jessie Titus, she having purchased the original interest therein of Carlo DePetris.

In 1947, Coos Bay Development Co., an Oregon corporation, as owner, was engaged in making improvements upon and completing the construction of a certain hotel building in Coos Bay, which was later known as the Tioga Hotel. The possible availability of this hotel building for rental when completed was brought to the attention of plaintiff and her husband in February, 1947. They made an investigation. Negotiations were then commenced between J. R. Ryan and one Rushlight, representing the owner, for the rental of that property. Although most of these negotiations were carried on by Ryan, nevertheless, plaintiff and her brother, one Josef Diamond, at times participated therein. Finally the parties arrived at an agreement for a lease to Ryan and his associates, but the agreement was not formally reduced to writing until the lease was executed on or about November 8, 1947.

However, Ryan did not await formal execution of the lease before taking steps to take over the hotel property. He immediately commenced to arrange for subleases of parts of the building for the conduct of separate business enterprises. He arranged for and directed the making of certain improvements and alterations of the premises. All in all, he proceeded to all intents and purposes as though the lease had actually been executed.

Prior to May, 1947, the parties discussed the formation of a corporation to take over the lease and the hotel operation. It was decided that Jessie Titus was

to have 25 per cent of the corporation, the plaintiff, 25 per cent, and Ryan, 50 per cent. Rushlight had insisted that when the lease was executed, its performance was to be secured by a chattel mortgage on furniture and equipment of the value of $100,000. This then decided the size of the corporation. However, the parties decided to authorize the issue of only 2,500 shares in the corporation of no par value stock. The value was fixed at $10 per share. It was agreed that Ryan was to have 1,000 shares, and Mrs. Titus and plaintiff each were to have 500 shares. It was further agreed that a note of the corporation in the sum of $20,000 was to be issued and delivered to Mrs. Titus, and a similar note to plaintiff, to represent the balance of their interest in the corporation.

In payment for their stock and as consideration of the execution of the notes, plaintiff and Mrs. Titus agreed to turn into the new corporation their several interests in the Uptown Hotel, which was to be sold by Ryan and the proceeds of such sale paid into the Coos Bay enterprise.

Pursuant to the agreement between Ryan, Mrs. Titus, and plaintiff, the Robert Ryan Hotels, Inc., an Oregon corporation, was formed in May, 1947. Those parties were the only subscribers to the capital stock of the corporation, Ryan subscribing for 1,001 shares; plaintiff, for 500 shares; and Mrs. Titus, for 500 shares.

According to the corporation minutes dated May 20, 1947, the three stockholders were elected directors of defendant corporation, and at a meeting of the directors held on the same day, Ryan was elected president, and Jean Ryan, secretary. The minutes of the meeting of the board of directors of said date show payment by the stockholders of the several amounts due on their

subscriptions to the capital stock and authorization for the issuance of stock to them accordingly.

During 1947 and until February, 1948, both plaintiff and Jessie Titus spent most of their time in California. Ryan carried on the business of the corporation with a high hand, conducting affairs as he would were it a private enterprise. For a time he carried the purported funds of the corporation in his own personal account at the bank; later he opened an account as trustee. Until the hotel opened for business in April, 1948, he kept no books showing the details of his operations. There is nothing in the corporation records to show how much money Ryan himself actually put into the corporation, either directly or by furniture and other equipment furnished to and installed in the hotel.

However, it is claimed that in November, 1947, when the lease was executed, the furniture and equipment installed in the hotel had an inventoried value in excess of $100,000. That furniture and equipment was covered by the chattel mortgage given to secure performance of the lease. The proof as to the actual value of that furniture and equipment at the time of the lease is very unsatisfactory. When an audit was later made in the summer of 1948, it was found that the corporation was in debt in excess of $60,000, much of that indebtedness being for furniture and equipment.

A large measure of the carelessness with which the affairs of the corporation were conducted during 1947 and until March, 1948, may be understood when we note the fact that during that period of time no one had an interest in the corporation other than the three original stockholders.

The evidence does not reveal when the Uptown

Hotel was finally and completely sold, nor how much of the proceeds of such sale, if any, found their way into defendant corporation. The only evidence in the record showing a receipt by defendant of anything out of the Uptown Hotel is a bill of lading indicating delivery by Hunt Transfer Co., Inc., on October 15, 1947, of a considerable number of items of second-hand furniture from the Uptown Hotel to the Tioga Hotel. Its value is not shown.

On or about March 16, 1948, one L. W. Rippey purchased 500 shares of the capital stock of defendant corporation, paying therefor the sum of $5,000, and at the same time he loaned the corporation the additional sum of $16,000, evidenced by a promissory note issued by the corporation.

Up to that time the records do not positively show the receipt of any other cash by the corporation, except the sum of $25,000 paid to the corporation on June 12, 1947, by Jessie Titus. This cash payment by Mrs. Titus covered payment for her stock subscription and entitled her to a promissory note of the corporation for $20,000.

After Rippey came into the corporation, there was a decided change in the methods theretofore practiced by Ryan in running its affairs. It was not long before an audit was demanded. The audit showed the corporation to be confronted by serious financial difficulties.

On August 31, 1948, a combined special meeting of the stockholders and board of directors of defendant corporation was held. At that meeting it was determined that Ryan was entitled to a credit of $5,665 for travel and other expenses incurred on behalf of the corporation; that the plaintiff Jean Ryan was entitled to the sum of $2,835 for services performed and ex-

penses incurred on behalf of defendant up to that date, less any personal withdrawals by her from the corporation. Then, so far as material to our discussion, the minutes of that meeting read as follows:

"Mr. J. R. Ryan thereupon advised, authorized and directed the stockholders of said corporation that certain moneys used for the acquisition of property transferred to said corporation, and certain moneys that he received from the individuals hereinafter named, which moneys he turned into the corporation for and on behalf of said persons, as follows: Mrs. Jessie Titus, $6,699.69; Jean Ryan, $26,699.69; * * *."

The amount of $6,699 each was claimed to represent the interests of Mrs. Titus and plaintiff in income from the Uptown Hotel between the time of the original agreement between the parties in the spring of 1947 and the sale of the property sometime later, but there is no record showing that these sums were ever paid into the defendant corporation by Ryan.

Ryan resigned as president of the corporation on August 31, 1948, and severed all connections therewith. He left Coos Bay and was not available as a witness on the trial. Neither was Mrs. Titus called as a witness. However, in passing, we note from the record that Mrs. Titus asserted no firm claim to the above-mentioned credit of $6,699.69.

At the August meeting of the corporation, Mrs. Ryan was employed to continue as manager of the hotel and remained as such manager until January 1, 1949. It was stipulated on the trial that she was entitled to a reasonable sum for her services as manager.

We do not assume to set forth all the facts of the case, but the foregoing summary is sufficient for the purposes of this opinion.

The trial court in its memorandum opinion made the following statement:

"The item of $26,699.69 alleged due in plaintiff's first cause of action, apparently refers to the same item shown in defendant's exhibit 2, the minute book of the corporation, under the minutes of August 31, 1948, meeting, wherein Mr. Ryan represented to the corporation that the above amount had been advanced to him by the plaintiff to acquire the property later transferred to the corporation. According to the exhibits and the testimony, this amount as represented by Mr. Ryan was never agreed to by the corporation.

"The plaintiff's own testimony as well as the testimony of others, and the exhibits, show that most of the money advanced by the plaintiff herein to Robert Ryan was long before Robert Ryan Hotels Inc., was organized, and that the money actually went into the Uptown Hotel in San Francisco and other Robert Ryan enterprises. The testimony was far from convincing that any money went into the defendant corporation as a loan or advancement by the plaintiff to the corporation."

We agree with the trial court. On plaintiff's first cause of action, the burden of proof was upon her to trace her funds into the defendant corporation. She proved beyond all doubt that she had advanced $19,000 to J. R. Ryan, but her own testimony shows that this money was invested in the San Francisco properties above mentioned and finally found its way into the Uptown Hotel. To establish her claim under her first cause of action, it was incumbent on plaintiff to show by clear and satisfactory evidence that upon the sale of the Uptown Hotel, a certain definite amount of money belonging to her was paid into the defendant corporation. This she wholly failed to do. Plaintiff was not entitled to recover upon her first cause of action.

■ As to plaintiff's second cause of action, it is admitted that she was entitled to a credit of $2,835 for services performed and expenses incurred for defendant up to August 31, 1948. It also is agreed that she was to be paid for her services as manager of the Tioga Hotel from September 1, 1948, to January 1, 1949. The trial court found that these services were reasonably worth the sum of $1,250, and with this finding we also agree. These two credits total the sum of $4,085.

As against these credits, plaintiff must be charged with all items properly chargeable against her. The trial court charged her with certain items as claimed by defendant, but denied others. We agree with the trial court that she should be charged with the sum of $750 for withdrawals up to August 31, 1948. We are particularly concerned with charges made against plaintiff subsequent to August 31, 1948. Hereinabove, when outlining the issues as made by the pleadings, we noted certain specific items that demand special attention.

■ The trial court disallowed defendant's claim for a charge of $1,300 for a diamond purchased for plaintiff. The facts connected with the purchase of this stone are as follows: Bickett's Jewelry Store was a sublessee of the defendant corporation. J. R. Ryan purchased the diamond from Bickett's for the agreed price of $1,300. To pay for it, he issued and delivered to Bickett's a receipt of the corporation for prepaid rent in that sum. This was the same as though he had actually used the cash of the corporation to make the purchase. At the time of this transaction both plaintiff and her husband were directors of the corporation. The evidence supports the conclusion that plaintiff knew about the transaction. She was the only one that profited

thereby. It would be inequitable to permit her to retain the property thus acquired without paying for it. We cannot agree with the trial court that this is not a proper charge against plaintiff, but should be charged to the J. R. Ryan account. Both plaintiff and J. R. Ryan were liable for this misuse of defendant's funds. 13 Am Jur 946, § 994.

■ The next item to be discussed is the charge of $281.81, represented by hotel withdrawal cards Nos. 8677 and 9202. Aside from one charge of $1.81 for a long distance telephone call, the amount is made up by a room charge of $10 per day for the month of January, 1949. During that month, plaintiff's status as manager of the hotel was in doubt. The manager was entitled to a room without payment of rental. We agree with the trial judge that this claim by defendant should be denied.

The trial court denied defendant's claim against plaintiff for the sum of $1,377.29 for and on account of living expenses of Mr. and Mrs. Ryan prior to August 31, 1948. The court held that that item should have been charged against the J. R. Ryan account. The evidence is undisputed that the living expenses were incurred by plaintiff and her husband jointly while living together as husband and wife.

By virtue of the provisions of § 63-207, OCLA, a husband and wife are jointly and severally liable for family living expenses. This section of the statute is for the protection of creditors. *Hansen v. Hayes,* 175 Or 358, 154 P2d 202; *Taylor v. Taylor,* 54 Or 560, 582, 103 P 524.

■ We are of the opinion that these living expenses were properly chargeable against plaintiff. However, there is included in said sum of $1,377.29 a charge of $500 which we deem to be an improper charge. This

sum of $500 represents cash paid out of corporation funds toward the payment of the promissory note mentioned in and forming the basis of plaintiff's third cause of action. A further and separate charge of $102 is sought to be made against plaintiff for interest paid out of corporation funds on said note.

We shall discuss these two items in connection with our discussion of plaintiff's third cause of action. Before doing so, however, we shall state our conclusions as to the total charges to be made against plaintiff. We find that plaintiff should be charged in the aggregate sum of $3,772.45, leaving a balance due her on her second cause of action in the sum of $312.55.

■ On or about May 4, 1948, a check of defendant corporation in the sum of approximately $4,300 was issued in payment of the purchase price of furniture procured for the Tioga Hotel. There were not sufficient funds in the corporation bank account to meet that check. Whereupon, on May 4, 1948, J. R. Ryan and plaintiff borrowed from the Coos Bay Branch of the First National Bank of Portland, the sum of $5,000, and this money was deposited to the credit of defendant corporation and entirely used for its purposes. At the time of making such loan, plaintiff and her husband executed and delivered to said bank their promissory note in the principal sum of $5,000, payable 30 days after date and bearing interest at the rate of six per cent per annum, from date of the note until paid.

The $500 item and the $102 item hereinabove mentioned were payments made on this note with corporation funds. J. R. Ryan never paid anything on this note, either principal or interest. The plaintiff was compelled to and did pay the full amount of the balance thereof; that is, the sum of $4,500 with interest. The

trial court was of the opinion that this was a charge that should properly be made against J. R. Ryan personally, and not against the corporation. With this we cannot agree. Plaintiff is entitled to recover said sum of $4,500, with interest thereon at the rate of six per cent per annum from May 4, 1948, until paid, less the sum of $102 paid as interest out of corporation funds.

■ We have given careful consideration to the claims asserted by defendant in connection with the original stock subscriptions of plaintiff and J. R. Ryan. There is an abundance of evidence showing that J. R. Ryan did expend monies of his own for the corporation, although the exact amount thereof cannot be determined from the records. It also is established that he turned over certain personal property to the corporation that was owned by himself, plaintiff, and Mrs. Titus. Until the time Rippey invested $21,000 in the corporation, the only money received by the corporation that is definitely shown by the records is the sum of $25,000 advanced by Mrs. Titus. But the records do satisfactorily disclose that a substantial sum of money in addition to the Titus money was actually expended on behalf of the corporation. This money could come only from Ryan and the plaintiff. We are of the opinion that there is no basis in law or in fact for requiring plaintiff to account for the $10,000 purportedly received from Ryan in May, 1947, for his stock in the corporation, nor for the $5,000 representing the cost of plaintiff's stock.

As for defendant's claim that plaintiff should account for the sum of $20,000 alleged to have been paid into the corporation by one DePetris, we find that it does not merit serious consideration. There is no evidence that DePetris ever paid anything into the corpo-

ration. The evidence does show that a corporation note in the sum of $20,000 in favor of DePetris was drawn, signed by J. R. Ryan, and delivered. The name of Jean Ryan appears on that note, but it developed on trial that her signature thereto had been forged. She never signed the note and knew nothing about it. At the time of trial no firm claim had been asserted on behalf of anyone that the note was valid and enforceable. It is manifest that plaintiff should not be required to account for this sum of money.

■ Defendant further claims that plaintiff should account to it for the costs and expenses incident to an audit of the books and records of the corporation. The audit was a necessary and proper expenditure on behalf of the corporation. It alone should bear that expense.

■ Defendant seeks to hold plaintiff responsible for all the sins of her former husband, committed in connection with the operation of the corporation. She was completely ignorant of most of his high-handed tactics. She signed documents when directed to do so by her husband, many times not actually knowing what they purported to be. She reposed in him the utmost confidence. Plaintiff should not be required to answer for his misdeeds any further than the law demands.

The decree of the trial court is modified by awarding plaintiff a judgment against defendant for the sum of $3,752.74, together with interest on the sum of $4,500 from May 4, 1948, until final judgment or mandate is entered herein, at the rate of six per cent per annum, less the sum of $102 paid as interest thereon out of corporation funds, instead of judgment for the sum of $1,530.84, as provided in the trial court's decree.

Plaintiff is entitled to costs.